No. 21-1764

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

DYLAN MITCHELL, DAYNA
SCHULTZ, LARISSA WALSTON,
MICHAEL RIGGS, IVAN
HOLLAND, ANDREW EHRHARDT,
ROSS WAGNER, and JAYLEN
BUTLER,

    Plaintiffs-Appellants,

EUGENE G. DOHERTY, in his
official capacity as the Chief Judge
of the 17th Judicial Circuit Court;
GARY CARUANA, in his official
capacity as the Sheriff of Winnebago
County; and WINNEBAGO
COUNTY,

    Defendants-Appellees.

Appeal from the United States
District Court for the Northern
District of Illinois


District Court No. 20-cv-50285


Hon. John Z. Lee, Judge Presiding

---

## BRIEF AND SHORT APPENDIX OF
## PLAINTIFFS-APPELLANTS

---

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

Brad J. Thomson
People's Law Office
1180 N. Milwaukee Ave.
Chicago, Illinois 60642
(773) 235-0070

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-1764

Short Caption: Dylan Mitchell, et al. v. Eugene Doherty et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Dylan Mitchell, Larissa Walston, Dayna Schutz, Michael Riggs, Ivan Holland, Andrew Ehrhardt, Ross Wagner,

and Jaylen Butler

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Law Office of Adele D. Nicholas

People's Law Office

(3)    If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

        na

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        na

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    na

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    na

---

Attorney's Signature: /s/ Adele D. Nicholas      Date: 5-13-21

Attorney's Printed Name: Adele D. Nicholas

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [✔] **No** [ ]

Address: Law Office of Adele D. Nicholas, 5707 W. Goodman St., Chicago, Illinois 60630

Phone Number: 847-361-3869      Fax Number: 312-528-7670

E-Mail Address: adele@civilrightschicago.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-1764 ___

Short Caption: Mitchell, et al. v. Doherty, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Dylan Mitchell, Dayna Schultz, Larissa Walston, Michael Riggs, Ivan Holland, Andrew Ehrhardt

Ross Wagner, Jaylen Butler

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
People's Law Office

Law Office of Adele D. Nicholas

(3) If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

n/a

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Brad J. Thomson     Date: 7-10-21

Attorney's Printed Name: Brad J. Thomson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐  **No** ☑

Address: People's Law Office, 1180 N. Milwaukee Ave. Chicago, IL 60642

Phone Number: 773-235-0070     Fax Number: _____

E-Mail Address: brad@peopleslawoffice.com

rev. 12/19 AK

iii

# TABLE OF CONTENTS

Disclosure Statements ..................................................................................ii

Table of Authorities ....................................................................................vi

Jurisdictional Statement ...............................................................................1

Issue Presented for Review ...........................................................................1

Statement of the Case ..................................................................................2

I.  Plaintiffs' First Amended Complaint ......................................................2

    A.  The Challenged Policy ........................................................................2

    B.  Application of the Policy to the Named Plaintiffs..............................2

    C.  The Defendants ..................................................................................5

II.  Procedural History.................................................................................6

III. The District Court's Decision ................................................................7

Summary of the Argument..............................................................................8

Argument .......................................................................................................9

I.  Standard of Review ................................................................................9

II. The District Court Erred in Finding that Persons Arrested Without a Warrant Are Not Entitled to a Bail Hearing Within 48 Hours of Arrest ..................................................................................9

    A.  The District Court Misapplied *McLaughlin* ......................................12

    B.  An *Ex Parte* Probable Cause Hearing Without a Bail Eligibility Determination Provides No Protection for The Interests the Supreme Court Sought to Protect with the 48-Hour Rule ......................................................................................16

        1.  A Probable Cause Determination Does Not Provide a Meaningful Opportunity to Seek Prompt Release..........................16

2. The Supreme Court Has Emphasized the Need to Minimize the Detention of All Arrestees, Not Just those Arrested Without Probable Cause ................................................................. 18

C. Decisions Applying *Gerstein* and *McLaughlin* Support Entitlement to a Bail Determination within 48 Hours......................... 21

1. The District Court Erred in Discounting *Bridewell* and *Paine*...... 21

2. Fifth and Eleventh Circuit Decisions Support Plaintiffs' Position.................................................................................................... 24

D. The Decisions on Which the District Court Relied Are Not Persuasive ........................................................................................... 26

Conclusion ................................................................................................. 29

Certificates .............................................................................................. 30

Appendix ............................................................................................. A.1–A.48

**TABLE OF AUTHORITIES**

| Cases | Page |
|---|---|
| *Atwater v. City of Lago Vista,* 532 U.S. 318 (2001) | passim |
| *Bailey v. City of Chi.,* 779 F.3d 689 (7th Cir. 2015) | 9, 28 |
| *Baker v. McCollan,* 443 U.S. 137 (1979) | 9, 19, 26–27 |
| *Bridewell v. Eberle,* 730 F.3d 672 (7th Cir. 2013) | passim |
| *Bogie v. Rosenberg,* 705 F.3d 603 (7th Cir. 2013) | 9 |
| *Calif. v. Green,* 399 U.S. 149 (1970) | 16 |
| *Carver v. Sheriff of LaSalle County,* 324 F.3d 947 (7th Cir. 2003) | 5 |
| *Citadel Gp. Ltd. v. Wash. Reg'l Med. Ctr.,* 692 F.3d 580 (7th Cir. 2012) | 9 |
| *Corley v. United States,* 556 U.S. 303 (2009) | 13 |
| *County of Riverside v. McLaughlin,* 500 U.S. 44 (1991) | passim |
| *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432 (7th Cir. 1986) | 21–22 |
| *Gerstein v. Pugh,* 420 U.S. 103 (1975) | passim |
| *Holloway v. Delaware Cnty. Sheriff,* 700 F.3d 1063 (7th Cir. 2012) | 9, 27, 28 |
| *Manuel v. City of Joliet,* 137 S. Ct. 911 (2017) | 28 |
| *O'Donnell v. Harris County,* 892 F.3d 147 (5th Cir. 2018) | 8, 25 |
| *Paine v. Cason,* 678 F.3d 500 (7th Cir. 2012) | passim |
| *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632 (7th Cir. 2011) | 4 |
| *Portis v. Chicago,* 613 F.3d 702 (7th Cir. 2010) | 21 |
| *Reger Development v. Nat'l City Bank,* 592 F.3d 759 (7th Cir. 2010) | 9 |
| *Walker v. City of Calhoun,* 901 F.3d 1245 (11th Cir. 2018) | 9, 24–25 |
| *Williams v. Dart,* 967 F.3d 625 (7th Cir. 2020) | 19, 26, 28 |

**Statutes**

42 U.S.C. §1983 ........................................................................ 1

28 U.S.C. §1331 ........................................................................ 1

28 U.S.C. §1291 ........................................................................ 1

**Other Authorities**

Léon Digard and Elizabeth Swavola, *Justice Denied: The Harmful and Lasting Effects of Pretrial Detention,* New York: Vera Institute of Justice, 2019 ........................................................ 26

Lissa Griffin, *The Correction of Wrongful Convictions: A Comparative Perspective*, 16 Am. U. Int'l L. Rev. 1241 (2001) ........................................ 17

Sarah Anne Mourer, *Believe it or Not: Mitigating the Negative Effects Personal Belief and Bias Have on the Criminal Justice System,* 43 Hofstra L. Rev. 1087 (2015) ........................................ 17

Rachel E. VanLandingham, *Discipline, Justice, and Command in the U.S. Military: Maximizing Strengths and Minimizing Weaknesses in a Special Society*, 50 New Eng. L. Rev. 21 (2015) ................................ 17

## JURISDICTIONAL STATEMENT

This action was originally filed in the United States District Court for the Northern District of Illinois. Plaintiffs' complaint is an action under 42 U.S.C. §1983 alleging violations of the Fourth Amendment of United States Constitution. The district court had federal question jurisdiction under 28 U.S.C. §1331. The Seventh Circuit has jurisdiction pursuant to 28 U.S.C. §1291. This is an appeal from a final judgment on the merits resolving all claims as to all parties.

The district court granted Defendants' motions to dismiss and denied Plaintiffs' motion for a preliminary injunction on March 30, 2021. ECF No. 57, Memorandum Opinion and Order, A.1–A.27.[1] The complaint was dismissed without prejudice. *Id.* at A.26–A.27. On Plaintiffs' motion, the district court entered judgment against Plaintiffs and in favor of Defendants on April 21, 2021. ECF No. 61, A.28–A.29. Plaintiff filed a timely notice of appeal April 29, 2021. ECF No. 62.

## ISSUE PRESENTED FOR REVIEW

Whether the Fourth Amendment, as interpreted by the Supreme Court in *Gerstein v. Pugh*, 420 U.S. 103 (1975) and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), entitles a pretrial detainee to a judicial determination of eligibility for release on bail within 48 hours of a warrantless arrest.

---

[1] References in this brief to "ECF No." refer to district court docket entries; "A." refer to pages of the Short Appendix filed herewith.

**STATEMENT OF THE CASE**

**I. Plaintiffs' First Amended Complaint**

**A. The Challenged Policy**

The 17th Judicial Circuit Court is responsible for conducting probable cause hearings and bail hearings for individuals arrested anywhere in Winnebago County and detained at the Winnebago County Jail in anticipation of criminal court proceedings. ECF No. 17, First Amended Complaint, at ¶2, 3. The 17th Judicial Circuit Court only conducts bail hearings on business days and does not make any arrangements for individuals arrested on weekends to be brought before a judge for a determination of bail eligibility until the next regular business day. *Id.* at ¶4–6. Thus, individuals arrested on Fridays can be held for as long as 72 hours before appearing before a judge. Plaintiffs, eight individuals arrested on weekends in Winnebago County, challenge the constitutionality of the policy and practice of failing to provide bail hearings within 48 hours of arrest under the Fourth Amendment of the United States Constitution. *Id.* at ¶4. Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, the named Plaintiffs seek to represent a class of similarly situated pretrial detainees who are currently or in the future will be detained at the Winnebago County Jail in excess of 48 hours without a judicial determination of bail eligibility. *Id.* at ¶23.

**B. Application of the Policy to the Named Plaintiffs**

Plaintiffs Dylan Mitchell, Dayna Schultz and Larissa Walston were arrested the evening of Friday, July 31, 2020, during a Black Lives Matter demonstration in

2

Rockford, Illinois. *Id.* at ¶25–45; *see also,* ECF 35-1 (Declarations of Plaintiffs expanding on their experiences). Plaintiff Michael Riggs was arrested at 1:00 p.m. on Saturday, August 1, 2020, during a Black Lives Matter demonstration in Rockford. *Id.* at ¶46–52. Mitchell, Schultz, Walston and Riggs were not brought before a judge for a determination of eligibility for release on bail until Monday, August 3, 2020, at 1:30 p.m. *Id.* at ¶25–52. Plaintiffs Mitchell, Shultz, and Walston were held in the Winnebago County Jail for approximately 66–68 hours before being brought before a judge. *Id.* at ¶29, 36, 43. Plaintiff Riggs was held in jail for approximately 48.5 hours before being brought before a judge. *Id.* at ¶50. When Mitchell, Schultz, Walston and Riggs appeared in court on Monday, August 3, all were given "I-Bonds," meaning that they were released on their own recognizance and did not have to post money to secure their pretrial release from the Jail. *Id.* at ¶29, 36, 43, 50.[2]

Plaintiffs Ross Wagner, Andrew Ehrhardt, and Jaylen Butler were arrested the evening of Friday, August 21, 2020, during a Black Lives Matter demonstration in Rockford, Illinois. *Id.* at ¶59–80. Plaintiffs Wagner, Ehrhardt, and Butler were held in the Winnebago County Jail without an opportunity to appear before a judge until 1:30 p.m. on Monday, August 24, 2020, more than 65 hours after their arrests. *Id.* at

---

[2]    Plaintiff Ivan Holland was arrested at 6:20 p.m. on Friday, July 31, 2020. *Id.* at ¶53. Holland was not brought before a judge for a bail hearing until Monday, August 3, 2020 at 1:30 p.m. *Id.* at ¶55. When Holland appeared in court, approximately 66 hours after his arrest, a judge determined he was eligible for bail and bail was set at $50,000. *Id.* at ¶56. Plaintiff Holland later pled guilty to burglary and was sentenced to time served in the Winnebago County Jail. Plaintiff Holland concedes that he cannot seek damages for his detention at the Jail. *See Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013) (a plaintiff "cannot receive damages for time spent in custody on a valid sentence.")

3

¶64, 71, 78; *see also* ECF 35-1. When Wagner, Ehrhardt and Butler appeared in court, they were all released on I-Bonds. *See* A.3.[3]

The prolonged pretrial detention had serious ill effects on the Plaintiffs. For example, Plaintiff Dylan Mitchell lost a job that she had held for two years because she was unable to report to work as scheduled on Monday, August 3, 2020. ECF 35-1 at 4–5. She suffers from ongoing anxiety, fear and weight loss as a result of her prolonged detention. *Id.* Plaintiff Jaylen Butler missed two days of work. ECF No. 17 at ¶79. Plaintiff Michael Riggs missed 16 hours of work, and was unable to seek medical attention for an open wound on his shoulder and bruised ribs that he sustained during his arrest. ECF 35-1 at 1. Plaintiff Larissa Walston was held in solitary confinement and only let out of her cell for one hour during the entire three days she was in custody (from Friday evening until Monday afternoon). *Id.* at 6. She wasn't permitted to take her prescription medication for three days while in custody. *Id.* Plaintiff Ross Wagner was held for three nights without being able to seek medical attention for a concussion and bleeding head wound. *Id.* at 8-9.[4]

---

[3] The First Amended Complaint was filed while Wagner, Ehrhardt and Butler were still in custody (ECF No. 17 at ¶8), so their eventual release was not alleged in the Complaint. But it was undisputed that at the time of the district court's decision these Plaintiffs had been released on I-Bonds. *See* A-3 ("[A]lthough detained when this action was filed, Wagner, Ehrhardt and Butler have since been released on their own recognizances ...")

[4] All charges stemming from the arrests of Plaintiffs Schultz, Ehrhardt, and Butler have been dismissed. Plaintiffs Mitchell, Riggs, and Wagner were sentenced to probation or conditional discharge. Charges are still pending against Plaintiff Walston. These dispositions are reflected on the website of the 17th Judicial Circuit Court (http://fce.wincoil.us/fullcourtweb/mainMenu.do). The Court can take judicial notice of these facts. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites.").

### C. The Defendants

Plaintiffs identified two Defendants responsible for their prolonged pretrial detention without a bail hearing. Defendant Eugene Doherty is the Chief Judge of the 17th Judicial Circuit Court, which covers Winnebago County. Plaintiffs sued Chief Judge Doherty in his official capacity. Pursuant to Article VI, §7(c) of the Illinois Constitution, Chief Judge Doherty has general administrative authority over the operations of the 17th Judicial Circuit Court, which includes the obligation to "provide for ... appropriate times and places of holding court." ECF 17, First Amended Complaint, at ¶20. As the Chief Judge, Doherty has final authority to set court schedules for the 17th Judicial Circuit Court, including the dates, times and schedules for bail hearings. *Id.*

Defendant Gary Caruana is the Winnebago County Sheriff. Plaintiffs sued Caruana in his official capacity. Pursuant to 55 ILCS 5/3-6017, Caruana has responsibility for the "custody and care" of the Winnebago County Jail. Caruana is the highest decision-maker with authority over the Jail, and he determines the policies of the Jail with respect to detainees' custody and confinement. *Id.* at ¶21.

Plaintiffs joined Winnebago County, Illinois, pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003) because the operations of the Jail and the 17th Judicial Circuit Court are ultimately the financial responsibility of Winnebago County. *Id.* at ¶22.

Plaintiffs sought class-wide injunctive relief against Defendant Chief Judge Doherty. *Id.* at ¶23. The named Plaintiffs sought compensatory damages from

Defendant Sheriff Caruana. *Id*. at ¶24.

## II. Procedural History

Plaintiffs Mitchell, Schultz, Walston, Riggs, and Holland initially filed this proposed class action case while they were still in custody on August 2, 2020, alleging that they were detained in excess of 48 hours in the Winnebago County Jail without a judicial determination of probable cause. ECF No. 1. After filing their initial complaint, Plaintiffs learned that, although the 17th Judicial Circuit does not give detainees arrested on a Friday or Saturday an opportunity to appear before a judge until Monday afternoon at 1:30, judges sign off on probable cause to detain individuals arrested on Fridays and Saturdays in *ex parte* proceedings within 48 hours of arrest. *See* ECF No. 55-1, Declaration of Chief Judge Doherty (explaining holiday and weekend schedules). Plaintiffs Mitchell, Schultz, Walston, Riggs, and Holland were not aware of these *ex parte* probable cause determinations having occurred when they filed their initial complaint. *See* ECF No. 19 at n. 1.

Plaintiffs filed their First Amended Complaint on August 24, 2020. In their First Amended Complaint, Plaintiffs alleged that, an *ex parte* determination of probable cause notwithstanding, the practice of detaining individuals arrested on Fridays, Saturdays, or holidays in the Winnebago County Jail without a bail hearing with 48 hours of arrest violates the Fourth Amendment. ECF No. 17.

At the time Plaintiffs filed their First Amended Complaint, named Plaintiffs Ross Wagner, and Andrew Ehrhardt and Jaylen Butler, all of whom were arrested on the evening of Friday, August 21, 2020, remained detained in the Winnebago

County Jail more than 48 hours after their arrests without being brought before a judge for a hearing to determine bail eligibility or the amount of bail. *Id.* at ¶8. While Wagner, Ehrhardt and Butler were in custody, Plaintiffs also filed motions for preliminary injunctive relief and class certification. ECF Nos. 18 and 19.

Defendant Sheriff Caruana moved to dismiss. ECF No. 28. Defendant Chief Judge Doherty opposed Plaintiffs' motion for a preliminary injunction and moved to dismiss. ECF No. 40.

## III.   The District Court's Decision

While recognizing that "this case demonstrates how pretrial detention can have serious consequences for all detainees" (A.14), the district court found that Plaintiffs had not stated a claim on which relief could be granted and, due to their failure to establish a likelihood of success on the merits, were not entitled to preliminary injunctive relief. A.26.

The district court had four principle bases for its decision: (1) the Supreme Court's decisions in *Gerstein v. Pugh*, 420 U.S. 103 (1975) and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) do not explicitly mandate a bail hearing take place within the same 48-hour time frame during which a probable cause hearing must take place (A.8–A.14); (2) language in two Seventh Circuit decisions interpreting *McLaughlin* as mandating a bail determination within 48 hours of arrest was dicta (A.14–A.19); (3) Fifth and Eleventh Circuit decisions supporting Plaintiffs' reading of *McLaughlin* did not "fully consider" the issue and/or misread *McLaughlin* (A.19–A.21); and (4) other Seventh Circuit case law suggests that "something in the realm

7

of 72 hours" before determining eligibility for release on bail is constitutionally permissible under the Fourth Amendment (A.21–A.25).

## SUMMARY OF THE ARGUMENT

The district court found that the Fourth Amendment does not entitle an individual arrested without a warrant to be brought before a judge for a determination of eligibility for release on bail within 48 hours of arrest. That decision was in error for four reasons. First, the district court overlooked the language of *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) and subsequent Supreme Court decisions, including *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), which suggest that *McLaughlin* is properly read as requiring both a probable cause determination and a bail hearing within 48 hours of a warrantless arrest. Second, the district court wrongly discounted the principle at the heart of the Court's decisions in *McLaughlin* and *Gerstein v. Pugh*, 420 U.S. 103 (1975)—*i.e.*, the need to "minimize the time a presumptively innocent individual spends in jail." *McLaughlin,* 500 U.S. at 58. By distinguishing the right to a prompt probable cause determination from the right to a prompt bail hearing, the district court failed to recognize the practical reality that a probable cause determination, standing alone, does not provide an arrestee any realistic opportunity for release from custody. Third, the district court erred in discounting the importance of relevant case law including this Court's decisions in *Paine v. Cason*, 678 F.3d 500 (7th Cir. 2012) and *Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013); the Fifth Circuit's decision in *O'Donnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018); and the Eleventh Circuit's

decision in *Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018), all of which read *McLaughlin* as protecting the right to release on bail for bailable offenses within 48 hours of arrest. Finally, the Court relied on inapposite cases including *Baker v. McCollan*, 443 U.S. 137 (1979), *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063 (7th Cir. 2012) and *Bailey v. City of Chi.*, 779 F.3d 689 (7th Cir. 2015) for its determination that the Fourth Amendment does not entitle an arrestee to a bail hearing within 48 hours of arrest. For all of these reasons, the district court's decision dismissing Plaintiffs' complaint should be reversed and remanded with directions to enter a preliminary injunction for Plaintiffs.

## ARGUMENT

### I.  Standard of Review

This Court reviews *de novo* a district court's dismissal of a claim pursuant to Fed. R. Civ. P. 12(b)(6), "construing the allegations in the complaint in the light most favorable to the non-moving party and giving that party the benefit of reasonable inferences from those allegations." *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (*citing Citadel Group Ltd. v. Washington Regional Medical Center*, 692 F.3d 580, 591 (7th Cir. 2012) and *Reger Development v. National City Bank*, 592 F.3d 759, 763 (7th Cir. 2010)).

### II. The District Court Erred in Finding that Persons Arrested Without a Warrant Are Not Entitled to a Bail Hearing Within 48 Hours of Arrest

More than four decades ago in *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Supreme Court found that an individual arrested without a warrant had a constitutional right to be brought before a neutral magistrate for a "fair and reliable

determination of probable cause" to detain either before or "promptly after" arrest. 420 U.S. at 125. In so holding, the Supreme Court noted the serious consequences of prolonged pretrial detention: "Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Id.* at 114 (internal citations omitted).

*Gerstein* left open the precise meaning of the term "promptly," leading the Court to clarify the contours of the right in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). In *McLaughlin*, the Court found that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Id.* at 56. The Court found that procedures that allowed an arrestee to be detained without a hearing for three days over a weekend or up to seven days over the Thanksgiving holiday did not comport with *Gerstein*'s promptness requirement. *Id.*

In briefing below, Plaintiffs explained that there were at least four reasons that *McLaughlin* is properly read as requiring both a probable cause determination and a bail hearing within 48 hours of a warrantless arrest—the language and history of *McLaughlin* itself and subsequent opinions commenting on *McLaughlin*'s meaning; two Seventh Circuit decisions in which this Court interpreted *McLaughlin* as requiring a bail hearing within 48 hours of a warrantless arrest; decisions of the Fifth and Eleventh Circuits interpreting *McLaughlin* as requiring a bail hearing within 48 hours of a warrantless arrest; and a lack of persuasive authority holding

to the contrary. *See* ECF No. 19 (Plf. Mot. for a Prelim. Injunction); and ECF No. 48 (Plf. Response to Def. Doherty Mot. to Dismiss).

The district court considered and rejected these arguments, concluding that "The Supreme Court in *McLaughlin* did not say that a bail hearing must be held within 48 hours of an arrest. Rather, the Court said that a bail hearing must occur within 48 hours of an arrest, if it is *combined* with a probable cause determination. … Neither *Gerstein* nor *McLaughlin* addressed the timing of a bail hearing where, as here, a probable cause determination is made separately within the 48-hour time period." A.12. To the extent that decisions of this Court and other Circuit Courts of Appeals hold to the contrary, the district court deemed those decisions "dicta" or "erroneous." A.17–A.21. As shown in the analysis below, that decision was in error for four reasons. First, the language and history of *McLaughlin* and other Supreme Court precedents suggest that a bail hearing should take place within the same 48-hour time frame as a determination of probable cause to detain. Second, an *ex parte* probable cause determination without a bail hearing provides no real opportunity for a presumptively innocent person to seek prompt release from jail. Third, the decisions of this Court in *Paine v. Cason*, 678 F.3d 500 (7th Cir. 2012) and *Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013) as well as decisions of the Fifth and Eleventh Circuits support the existence of a right to a bail hearing within 48 hours of arrest. And fourth, the case law on which the district court relied for its decision that detention without a bail hearing for three days or more is permissible under the Fourth Amendment is off base.

## A. The District Court Misapplied *McLaughlin*

It is true that the explicit holding of *McLaughlin* is that a probable cause determination must be made within 48 hours of a warrantless arrest. But the district court erred in reading *McLaughlin* as if it held that so long as an *ex parte* probable cause determination is made within 48 hours, a bail hearing can wait. The Supreme Court did not view bail hearings as wholly separate from probable cause determinations in the pretrial detention context. A proper reading of *McLaughlin* in light of its procedural history makes clear that the Supreme Court intended the 48-hour time frame for probable cause determinations to encompass the time frame for setting bail.

First, the complaint in *County of Riverside* made clear that the plaintiffs saw the two pretrial rights as unitary. Their complaint sought the following relief:

> [A]n order and judgment requiring that the defendants and the County of Riverside provide in-custody arrestees, arrested without warrants, *prompt probable cause, bail and arraignment hearings.*

*McLaughlin*, 500 U.S. at 48 (emphasis added). Accordingly, the class certified in *McLaughlin* was defined as follows:

> All present and future prisoners in the Riverside County Jail including those pretrial detainees arrested without warrants … from August 1, 1987 to the present, and all such future detainees *who have been or may be denied prompt probable cause, bail or arraignment hearings.*

*Id.* at 49 (emphasis added).[5]

---

[5] The County of Riverside's practice of combining probable cause hearings with bail and arraignment is not anomalous. The Circuit Court of Cook County combines probable cause determinations with bail determinations and makes such hearings available seven days a week, including holidays. *See* Circuit Court of Cook County, Bond Court Information (available at: http://www.cookcountycourt.org/ABOUT-THE-COURT/Municipal-

Second, the Supreme Court's description of the competing rights and interests at issue in the pretrial detention context make clear that the Court intended that a bail determination would be made within the same 48-hour time frame as a probable cause determination. In particular, the *McLaughlin* Court noted that *Gerstein* sought to balance, on one hand, the risk that prolonged pretrial detention could "imperil [a] suspect's job, interrupt his source of income, and impair his family relationships" (*McLaughlin* at 52 (*citing Gerstein* at 114)) and, on the other hand, the burden that "proliferation of pretrial proceedings" (*e.g.*, separate probable cause determinations, arraignments, and bail hearings) could impose on local court systems (*id*. at 53). Thus, the Court thought it wise to give states the flexibility to "integrate prompt probable cause determinations into their differing systems of pretrial procedures" and noted that if a probable cause determination was required immediately "upon completing the administrative steps incident to arrest" "incorporating probable cause determinations into the procedure for setting bail or fixing other conditions of pretrial release—which *Gerstein* explicitly contemplated— would be impossible." *Id*. at 54. Thus the Court fixed 48 hours as the upper time limit for a probable cause determination because such a timeframe was deemed to be sufficient to allow the states to combine probable cause hearings with other pretrial proceedings such as setting bail. The Court concluded as follows:

Department/First-Municipal-District-Chicago/Bond-Court) ("For all [misdemeanor and felony] arrests … that require a court appearance … for the setting of bail, hearings to set bail are conducted [s]even days a week, court holidays included."). Similarly, in the federal system, an initial appearance combines a determination of eligibility for release on bail with other preliminary matters. *See Corley v. United States*, 556 U.S. 303, 320 (2009) (*citing* Fed. R. Crim. P. 5).

> Everyone agrees that the police should make every attempt to minimize the time a presumptively innocent individual spends in jail. … Under *Gerstein*, jurisdictions may choose to combine probable cause determinations with other pretrial proceedings, so long as they do so promptly. This necessarily means that only certain proceedings are candidates for combination. Only those proceedings that arise very early in the pretrial process—such as bail hearings and arraignments—may be chosen. Even then, every effort must be made to expedite the combined proceedings.

*Id.* at 58.

Contrary to the district court's conclusion, this language should not be read as countenancing delays longer than 48 hours for setting bail so long as an *ex parte* determination of probable cause is made within 48 hours. To the contrary, *McLaughlin* is properly read as holding that the reason the Supreme Court didn't set a *shorter* time frame than 48 hours for a probable cause determination was that there would be administrative efficiency in combining probable cause determinations with bail determinations—the presumption being that bail determination must also occur within 48 hours.[6]

Plaintiffs' reading of *McLaughlin* finds further support in the Supreme Court's subsequent decision in *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001). In *Atwater*, the Supreme Court upheld the constitutionality of custodial arrests of individuals suspected of misdemeanor offenses. The Court noted that Atwater spent approximately one hour in a holding cell, "after which she was taken before a

---

[6] Indeed, in his dissent, Justice Scalia suggested that 24 hours should be set as the upper limit for a probable cause determination following a warrantless arrest and would not have permitted delay for the "administrative convenience of combining the probable-cause determination with other state proceedings." *McLaughlin*, 500 U.S. at 63-64 (Scalia, J., dissenting). This view was not adopted by the majority, which observed that such a rigid time frame would not "permit[] jurisdictions to incorporate probable cause determinations into other pretrial procedures." *Id.* at 55.

magistrate and released on $310 bond." *Id.* at 324. Citing *McLaughlin*, the Court noted that there was no reason to think Atwater was "atypical" in being given "a prompt opportunity to request release" from custody because "anyone arrested for a crime without formal process … is entitled to a magistrate's review of probable cause within 48 hours." *Id.* at 352 (*citing McLaughlin*, 500 U.S. at 55-58). An arrestee's entitlement to seek prompt release from custody was a key component of the Court's decision that "warrantless misdemeanor arrests [do not] need constitutional attention." *Id.*

The district court rejected Plaintiffs' reading of *McLaughlin*, holding that "on their own terms, *Gerstein* and *McLaughlin* do not require a bail hearing within 48 hours of an arrest" and the language of *Atwater* "falls short of *requiring* a bail hearing to take place within 48 hours of arrest." A.14. The district court's cautious reading of Supreme Court precedents is perhaps understandable given the lack of direct treatment of the issue by the Court. However, as shown below, the decision doesn't accord sufficient respect to the important private interest that the Court sought to protect with the 48-hour rule—*i.e.*, "minimiz[ing] the time a presumptively innocent individual spends in jail." *McLaughlin*, 500 U.S. at 58. The right of an arrestee to promptly seek release from custody would become a nullity if bail hearings were not required within the same 48-hour timeframe mandated for probable cause hearings.

**B. An *Ex Parte* Probable Cause Hearing Without a Bail Eligibility Determination Provides No Protection for The Interests the Supreme Court Sought to Protect with the 48-Hour Rule**

In support of its reading of *McLaughlin*, the district court distinguished the need for a prompt probable cause hearing from the need for a prompt bail hearing, writing that the Supreme Court was "primarily concerned" with the negative consequences of pretrial detention "flowing to 'those so blameless that there was not even good reason to arrest them.'" A.-13 (*quoting McLaughlin*, 500 U.S. at 71 (Scalia, J., dissenting)). But this observation was based on two faulty premises: (1) that a probable cause determination without a concomitant bail hearing protects against wrongful pretrial detention; and (2) that the Supreme Court is concerned only with pretrial detentions without probable cause.

**1. A Probable Cause Determination Does Not Provide a Meaningful Opportunity to Seek Prompt Release**

It has been repeatedly observed by courts and legal scholars that because probable cause is such a low threshold, proceedings at which probable cause is the standard seldom result in a finding in an arrestee's favor. *See, e.g.*, *Calif. v. Green*, 399 U.S. 149, 196 (1970) (Breyer, J. dissenting) ("Preliminary hearings in California are not atypical in their nature and objectives: In most California criminal prosecutions the preliminary examination is conducted as a rather perfunctory uncontested proceeding with only one likely denouement—an order holding the defendant for trial. Only television lawyers customarily demolish the prosecution in the magistrate's court. The prosecution need show only 'probable cause,' a burden vastly lighter than proof beyond a reasonable doubt.") (citations and quotations

omitted); *see also* Sarah Anne Mourer, *Believe it or Not: Mitigating the Negative Effects Personal Belief and Bias Have on the Criminal Justice System,* 43 Hofstra L. Rev. 1087, 1090 (2015) ("Probable cause is amongst the lowest burdens of proof in the judicial system. It is a far cry from assessing that a reasonable juror could find evidence of guilt sufficient beyond a reasonable doubt.") (citations omitted).

The improbability of an arrestee's securing pretrial release through a probable cause hearing alone is compounded where, as is the practice in the 17th Judicial Circuit, the arrestee and his counsel are not even permitted to be present for the probable cause hearing. *See* Lissa Griffin, *The Correction of Wrongful Convictions: A Comparative Perspective,* 16 Am. U. Int'l L. Rev. 1241, 1259 (2001) ("In federal cases, the Fifth Amendment to the U.S. Constitution requires that a felony charge be brought by a grand jury indictment. This requirement has little actual meaning, as the grand jury operates in secret and is entirely controlled by the prosecution. For example, when the prosecutor presents his evidence to the grand jury, neither defense counsel, the defendant, nor the court is entitled to be present. Generally, the prosecutor charges the jury on the law. The rules of evidence do not apply and a finding of 'probable cause' is sufficient to vote an indictment.") (citations omitted); *see also*, Rachel E. VanLandingham, *Discipline, Justice, and Command in the U.S. Military: Maximizing Strengths and Minimizing Weaknesses in a Special Society,* 50 New Eng. L. Rev. 21, 35 (2015) (noting that federal grand jury proceedings typically "rubber-stamp" U.S. attorney's charging decisions).

The present case demonstrates the inevitability that presumptively innocent arrestees will be held in jail for more than 48 hours if a probable cause determination is all that is required within that time frame. Probable cause to detain was found as to all of the named Plaintiffs based solely on a magistrate's review of a police report presented by an assistant state's attorney. *See* ECF No. 55-1 at ¶3 (declaration of Chief Judge Doherty setting forth weekend and holiday probable cause review procedures); ECF No. 48-1 (example "probable cause statement" and finding of probable cause). But there is reason to believe that extended detention of the Plaintiffs was not warranted: all eight Plaintiffs were found eligible for release on bail; seven of the eight were given I-Bonds; and the charges against three of the eight were later dismissed on the prosecution's motion.

In short, the practical reality is that an *ex parte* probable cause hearing does not provide a meaningful opportunity for an arrestee to seek release from custody. Thus, if a bail hearing isn't required within the same 48 hour timeframe as a probable cause determination, there is no real safeguard against the negative consequences of extended pretrial detention that the Supreme Court identified, including the prolonged jailing of innocent persons, unnecessary interruption of employment, and impairment of family bonds.

2. **The Supreme Court Has Emphasized the Need to Minimize the Detention of All Arrestees, Not Just those Arrested Without Probable Cause**

The second error in the district court's reasoning is that the *McLaughlin* decision was concerned only with the pretrial detention of persons for whom no probable

18

cause exists. The district court's support for this contention is a quote from Justice Scalia's *McLaughlin* dissent. But the majority opinion in *McLaughlin* and the Supreme Court's decision in *Atwater* reveal that the Court has emphasized the need to minimize the pretrial detention of all arrestees, not just those for whom no probable cause to arrest exists.

In *McLaughlin*, Justice O'Connor wrote for the majority that "Everyone agrees that the police should make every attempt to minimize the time a presumptively innocent individual spends in jail. … [E]very effort must be made to expedite the combined proceedings." *McLaughlin*, 500 U.S. at 58. Thus, it is clear that the Supreme Court's concern was not solely with the extended detention of individuals arrested without probable cause, but with the imprisonment of all "presumptively innocent" arrestees. This is consistent with the Supreme Court's decision in *United States v. Salerno*, 481 U.S. 739 (1987) a few years earlier, in which the Court wrote: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." 481 U.S. at 755. *See also Baker v. McCollan,* 443 U.S. at 153 (Stevens, J., dissenting) ("The burdens of pretrial detention are substantial ones to impose on a presumptively innocent man, even when there is probable cause to believe he has committed a crime.")[7]

---

[7]  *See also Williams v. Dart*, 967 F.3d 625, 634 (7th Cir. 2020) ("At the time of the founding and still today, the primary purpose of an arrest is to ensure the arrestee appears to answer charges. This purpose is accomplished by bringing the arrestee promptly before the court so that it may issue one of three orders: discharge, commitment, or bail.") (citations omitted).

In *Atwater*, the Supreme Court found that the Fourth Amendment does not forbid "a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine." *Atwater*, 532 U.S. at 323. The dissent worried about the "grave potential for abuse" of the power to subject persons accused of minor crimes to "pointless indignity and confinement." *Id.* at 361-62 (O'Connor, J., dissenting). The majority responded to this concern by noting that there was no evidence that the power to make misdemeanor arrests had led to widespread abuses, in part because of other checks on law enforcement authority, such as the 48-hour rule articulated in *McLaughlin* which gives suspects "a prompt opportunity to request release." *Id.* at 352.

In *Atwater*, it was uncontested that the arrest was supported by probable cause. *See id.* at 368 ("Atwater readily admits … that she violated Texas' seatbelt law.") Thus, a probable cause determination, standing alone, would have provided Ms. Atwater no opportunity to request release from police custody. No, the only reason that Atwater was permitted to be released promptly after her arrest was that she was deemed eligible for release on bond at the same time as the probable cause hearing. *Id.* at 324. If, as the district court contends, the Fourth Amendment permits the government to delay a bail hearing for several days so long as there is a probable cause finding within 48 hours of arrest, then the whole foundation of *Atwater* would have to be revisited, and persons accused of minor offenses would be at risk of extended imprisonment.

**C. Decisions Applying *Gerstein* and *McLaughlin* Support Entitlement to a Bail Determination within 48 Hours**

As explained in briefing in the district court, Plaintiffs' contention that the Fourth Amendment entitles arrestees to a bail hearing within 48 hours of arrest finds support in two decisions of this Court and decisions of the Fifth and Eleventh Circuits. *See* ECF No. 19 (Plf. Mot. for a Prelim. Injunction); and ECF No. 48 (Plf. Response to Def. Doherty Mot. to Dismiss). The district court declined to follow these decisions. A.14–A.21. For the reasons set forth below, the district court erred.

**1. The District Court Erred in Discounting *Bridewell* and *Paine***

This Court twice has described *McLaughlin* as mandating a bail hearing within 48 hours of a warrantless arrest. In *Paine v. Cason*, 678 F.3d 500 (7th Cir. 2012), this Court found that Chicago police were entitled to qualified immunity in a claim brought on behalf of an arrestee who was injured after being released from police custody in a dangerous neighborhood while experiencing a serious mental health crisis. This Court found that the plaintiff could not hold the police liable for having released her from custody because recognition of a constitutional "right to be detained" for mental-health evaluation or treatment would run headlong into the right to be released on bail within 48 hours as set forth in *McLaughlin*:

> Existing law creates a right to be released on bail (for bailable crimes) as promptly as possible, with 48 hours as the outside time before presentation to a judicial officer who can make an authoritative decision. *See County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). When it is possible, police who do not need to hold someone for an appearance in court must release people faster. *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432 (7th Cir. 1986), suggests that in some circumstances even four hours may be excessive. In *Portis* [*v. Chicago*, 613 F.3d 702 (7th Cir. 2010)], a district court ordered the City to pay damages for not releasing one category of

arrestees in less than two hours; we reversed that decision, holding that the sole numerical line is the one from *McLaughlin*, but did not retreat from *Gramenos* and other decisions that the constitutional standard of reasonableness often may call for release before 48 hours.

*Id.* at 508-09.

The district court declined to follow *Paine*, describing its discussion of *McLaughlin* as dicta and observing that because *Paine* was decided on qualified immunity grounds, this Court's discussion of *McLaughlin* was not "necessary for its decision." A.17.

Similarly, the district court declined to follow this Court's decision in *Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013). In *Bridewell*, this Court considered a variety of constitutional claims brought by an arrestee against two Chicago police detectives who charged her with murder and drug possession. One of her claims (the one pertinent to this case) was that "the police took longer than the Fourth Amendment allows to present her to a judge." *Id.* at 675. In its consideration of this claim, this Court wrote as follows:

> The Supreme Court observed in *Riverside* that the reason for requiring suspects in custody to be taken before a magistrate promptly is to ensure that detention based on 'incorrect or unfounded suspicion' is short-lived, 500 U.S. at 52, and that persons properly arrested but entitled to bail can be released promptly.

*Id.* at 676. Ultimately, this Court affirmed summary judgment for the detectives on the Fourth Amendment claim because the evidence "showed that Bridewell had been arrested [with probable cause] and was not entitled to release on bail. If the police had complied with *Riverside*, she would have learned these things a little sooner but would have remained in jail. This means that she was not injured by the

delay." *Id.* at 676-77.

Declining to follow *Bridewell*, the district court concluded that the Seventh Circuit's "mention of bail could have been deleted without seriously impairing the analytical foundations of the holding" and therefore, the statement was dicta. A.18 (citations omitted).

There are two reasons that the district court's decision not to follow *Paine* and *Bridewell* was mistaken. First, it was an error to call this Court's discussion of *McLaughlin* in *Paine* and *Bridewell* dicta. *McLaughlin* was not ancillary to the questions addressed in those cases—it was central to the decisions rendered. For example, in *Paine* this Court found that police were entitled to qualified immunity because there is not a "clearly established" right to be detained, but the reason the Court so held was *McLaughlin*'s 48-hour rule, which this court unambiguously interpreted as encompassing a right to release on bail within 48 hours. 678 F.3d at 508-09. Similarly, when this Court found that the plaintiff in *Bridewell* could not prevail on her Fourth Amendment claim, its holding was that she was not damaged by the failure to provide a bail hearing within 48 hours because she was not eligible for bail. 730 F.3d at 677. If *McLaughlin* did not protect the right to a bail hearing with 48 hours, there would have been no occasion for this Court to consider whether the plaintiff was injured by the defendants' failure to comply with that deadline.

Second, the district court erred in its failure to follow *Paine* and *Bridewell* because these cases contain this Court's most thorough and direct analysis of *McLaughlin* in the context of the right to be brought before a judge for a bail

hearing. Thus, even if *Paine* and *Bridewell*'s analysis of *McLaughlin* could properly be described as dicta, it merited more serious consideration than the district court gave it.

### 2. Fifth and Eleventh Circuit Decisions Support Plaintiffs' Position

In addition to the Seventh Circuit's decisions in *Paine* and *Bridewell*, recent decisions the Fifth and Eleventh Circuit Courts of Appeal also read *McLaughlin* as requiring a bail hearing within 48 hours of a warrantless arrest.

In *Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018), the Eleventh Circuit considered "what process the Constitution requires in setting bail for indigent arrestees." *Id*. at 1251. A class of indigent arrestees claimed that the city's standardized bail schedule led to their being held in jail longer than non-indigent arrestees for no reason other than their poverty. *Id*. The district court entered an injunction requiring the City to hold bail hearings within 24 hours of arrest. *Id*. at 1253. The Eleventh Circuit found that a hearing to determine release eligibility within the 48-hour timeframe set forth in *McLaughlin* was presumptively constitutional. The Court wrote as follows:

> Under *McLaughlin*, the City can presumptively hold a person for 48 hours before even establishing probable cause—that is, without even proving that it has evidence that he has committed a crime. It stands to reason that that the City can take the same 48 hours to set bail for somebody held with probable cause. Indeed, *McLaughlin* expressly envisioned that one reason for the 48-hour window is so that probable cause hearings could be combined with 'bail hearings and arraignments.' … We agree with the Fifth Circuit; indigency determinations for purposes of setting bail are presumptively constitutional if made within 48 hours of arrest.

*Walker*, 901 F.3d at 1266-67 (*citing McLaughlin*, 500 U.S. at 58).

The Fifth Circuit's decision in *O'Donnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018) arose in a similar context—*i.e.*, indigent arrestees challenged bail-setting procedures that resulted in their pre-trial incarceration while similarly situated non-indigent arrestees went free. *Id*. at 153. As in *Walker*, the district court entered an injunction requiring bail hearings within 24 hours of arrest, and the Fifth Circuit determined that *McLaughlin*'s 48-hour timeframe also applied to hearings to determine eligibility for release on bail:

> We find that the district court's 24-hour requirement is too strict under federal constitutional standards. … *Gerstein* was later interpreted as establishing a right to a probable cause hearing within 48 hours. *McLaughlin*, 500 U.S. at 56-57. Further, *McLaughlin* explicitly included bail hearings within this deadline. *Id*. at 58. We conclude that the federal due process right entitles detainees to a hearing within 48 hours.

*O'Donnell*, 892 F.3d at 160-61.

The district court declined to follow these decisions. The district court found *Walker* to be unpersuasive, writing that "the Eleventh Circuit in *Walker* did not hold that *McLaughlin* requires a bail hearing within 48 hours of an arrest, only that a bond hearing within that timeframe would be presumptively constitutional." A.20. With regard to *O'Donnell*, the district court noted that it "appear[s] to support Plaintiff's reading of *McLaughlin*" (A.21) but declined to follow it, finding that the Fifth Circuit's treatment of *McLaughlin* was "erroneous," referencing its earlier conclusion that *McLaughlin* only mandates a bail hearing within 48 hours of arrest if a bail hearing is combined with a probable cause determination. *Id*.

While *Walker* and *O'Donnell* are not binding, the district court erred in discounting their importance. Like the Seventh Circuit, both the Fifth and Eleventh

25

Circuits view *McLaughlin's* 48-hour limitation as applicable to bail hearings as well as probable cause determinations. Plaintiffs submit that there is a good reason that most courts have presumed a bail hearing is required within 48 hours of a warrantless arrest: without an opportunity to be brought before a judge and considered for prompt release on bail, the harms of extended pretrial detention such as loss of income, increased likelihood of conviction, and interruption of family caretaking responsibilities[8] are certain to befall innocent persons, persons accused of minor crimes, and persons who present little risk of evading criminal court proceedings.[9] In the absence of any controlling authority to the contrary, the district court erred in disregarding the great weight of authority on this question of law.

**D. The Decisions on Which the District Court Relied Are Not Persuasive**

As set forth above, *Paine* and *Bridewell* are the only cases in which this Court has explicitly opined on whether *McLaughlin* requires a bail determination within 48 hours of a warrantless arrest. Nonetheless, the district court declined to follow those cases and instead relied on inapposite cases in which the timing of a bail determination was not at issue.

First, the district court cited to *Baker v. McCollan*, 443 U.S. 137 (1979), a case in which the Supreme Court held that an individual arrested on a valid warrant was not entitled to a separate judicial determination of probable cause to detain under

---

[8] *See* Léon Digard and Elizabeth Swavola, *Justice Denied: The Harmful and Lasting Effects of Pretrial Detention,* New York: Vera Institute of Justice, 2019 (available at: https://www.vera.org/downloads/publications/Justice-Denied-Evidence-Brief.pdf).

[9] *See Williams v. Dart,* 967 F.3d at 634 ("At the time of the founding and still today, the primary purpose of an arrest is to ensure the arrestee appears to answer charges.")

*Gerstein*. A.23–A.24. There are three reasons this reliance was inappropriate: (1) *Baker* was concerned with an arrestee's opportunity to protest his innocence and did not comment on the availability or timing of a bail hearing; (2) *Baker* was decided more than a decade before *McLaughlin* set 48-hours as the maximum time that an individual arrested without a warrant can be held without being brought before a judge;[10] and (3) *Baker* dealt with an individual arrested on a valid warrant—circumstances not present here or in *McLaughlin*. Tellingly, the *McLaughlin* decision made no reference to *Baker* when deciding that 48 hours satisfied *Gerstein*'s promptness requirement. *See generally McLaughlin*, 500 U.S. 44.

Next, the district court relied on *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063 (7th Cir. 2012), citing this case as holding that a "72-hour detention before an initial hearing" did not violate the Fourteenth Amendment. A.24. But the district court's reliance on *Holloway* was also misplaced. The plaintiff in *Holloway* did not raise any question about the timing of his bail hearing—his complaint was that he was held for nine days without charges being filed against him and received inadequate medical care during that detention. 700 F.3d at 1066–67. This Court offered no comment about the timing of a bail hearing under *McLaughlin* because it was not at issue in the case. Moreover, the propriety of reliance on *Holloway* is

---

[10]  Although the availability and timing of a bail hearing was not at issue in *Baker*, the three dissenting justices expressed concern about procedures that allowed an arrestee to be held for three days over a holiday weekend, concerns that were later echoed in *McLaughlin*. *See Baker*, 443 U.S. at 154-55 (Stevens, J., dissenting) ("[T]he coincidence of a holiday weekend hardly reduces the deprivation of liberty …; indeed, one might regard the deprivation of liberty as particularly serious over a holiday weekend, and require a higher standard of care at such a time.")

further thrown into doubt because it applied a Fourteenth Amendment "shocks the conscience" standard to the plaintiff's claims of being improperly detained after a probable cause finding. *Id*. at 1069. Since *Holloway* was decided, the Supreme Court and this Court have both clarified that the Fourth Amendment's reasonableness standard, not the substantive due process "shocks the conscience" standard, governs claims of wrongful pretrial detention. *See Williams v. Dart,* 967 F.3d 625, 632 (7th Cir. 2020) (*citing Manuel v. City of Joliet,* 137 S. Ct. 911, 914 (2017)) (holding that the Fourth Amendment "establishes the minimum constitutional standards and procedures not just for arrest but also for detention.") (internal quotations omitted)).

Finally, the district court cited to *Bailey v. City of Chi.*, 779 F.3d 689 (7th Cir. 2015), noting that the Court in *Bailey* did not comment on the timing of the plaintiffs' bail hearing, which took place more than 48 hours after the plaintiff's arrest. A.25. It is unsurprising that this Court offered no comment about when a bail hearing must take place because the plaintiff in *Bailey* raised no questions about the timing of his bail hearing. Rather, his claim was that a probable cause hearing should have occurred sooner than 47 hours after his arrest. Notably, in both *Holloway* and *Bailey*, the plaintiffs were ordered held without bond, so the timing of their bail hearings wasn't at issue—likely because an earlier hearing would not have offered them any possibility of earlier release. *See Bailey*, 779 F.3d at 693 ("a different state judge denied Bailey bail pending his trial."); *Holloway*, 700 F.3d at 1066 ("the court … ordered that he be held without bond.")

In summary, none of the cases on which the district court relied support its departure from this Court's decision in *Bridewell* and *Paine* that *McLaughlin* mandates a bail hearing within 48 hours of a warrantless arrest.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court reverse the district court's decision granting Defendants' motions to dismiss and remand this case to the district court with instructions to enter injunctive relief for Plaintiffs.

Respectfully submitted,

/s/ Adele D. Nicholas
*Counsel for Plaintiffs-Appellants*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

Brad J. Thomson
People's Law Office
1180 N. Milwaukee Ave.
Chicago, Illinois 60642
(773) 235-0070

**CERTIFICATE OF COMPLIANCE WITH**
**F.R.A.P 32(a)(7), F.R.A.P. 32(g) and C.R. 32(c)**

I certify that the foregoing Plaintiff-Appellant's Brief conforms to the rules contained in F.R.A.P 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 8,030 words.

/s/ Adele D. Nicholas
*Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF SERVICE**

I certify that on July 12, 2021, I electronically filed the **Brief and Short Appendix for Plaintiff-Appellant** with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Adele D. Nicholas
*Counsel for Plaintiffs-Appellants*

**CIRCUIT RULE 30(d) STATEMENT**

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the appendix

/s/ Adele D. Nicholas
*Counsel for Plaintiffs-Appellants*

# APPENDIX

Memorandum Opinion and Order (3/30/21) .................................................. A.1–A.27

Order Entering Judgment (4/21/21) ........................................................... A.28–A.29

First Amended Complaint (ECF No. 17) ..................................................... A.30–A.48

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DYLAN MITCHELL, DAYNA SCHULTZ, LARISSA WALSTON, MICHAEL RIGGS, IVAN HOLLAND, ANDREW EHRHARDT, ROSS WAGNER, and JAYLEN BUTLER, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. 20 C 50285 |
| v. | ) ) | Judge John Z. Lee |
| EUGENE DOHERTY, in his official capacity as the Chief Judge of the 17th Judicial Circuit Court of Illinois; GARY CARUANA, in his official capacity as the Sheriff of Winnebago County; and WINNEBAGO COUNTY, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Winnebago County, Illinois, does not conduct bail hearings over a normal weekend. The question is whether that practice is constitutional.

Plaintiffs are individuals who, at various times during the summer of 2020, were arrested in Winnebago County between Friday night and Saturday morning. Each Plaintiff was jailed over the weekend until Monday afternoon, when a court determined that each was eligible for release. Plaintiffs argue that Winnebago County's failure to hold bail hearings within 48 hours of their arrests violates the Fourth Amendment as interpreted by the Supreme Court in *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

A.1

To remedy this, Plaintiffs have filed a putative class action seeking injunctive relief that would require Winnebago County to conduct a bail hearing within 48 hours for individuals who are arrested and held without a warrant. Plaintiffs also seek damages on an individual basis for violations of their rights caused by their weekends in jail. At this stage, Plaintiffs have filed motions seeking a preliminary injunction and class certification; Defendants, in turn, have moved to dismiss the complaint. For the reasons explained below, the Court dismisses Plaintiffs' first amended complaint without prejudice. Plaintiffs' motions are denied as moot.

## I.     Background[1]

### A.     Facts

On the night of Friday, July 31, 2020, Plaintiffs Dylan Mitchell, Dayna Schultz, and Larissa Walston were attending a protest in support of Black Lives Matter when they were arrested without warrants by the Rockford police. 1st Am. Class Action Compl. ("Am. Compl.") ¶¶ 25–45, ECF No. 17. Plaintiff Ivan Holland also was arrested that night (although the complaint does not specify whether he was a protester). *Id.* ¶¶ 53–58. The police arrested Plaintiff Michael Riggs at another demonstration the following day, *id.* ¶¶ 46–52, and Plaintiffs Ross Wagner, Andrew Ehrhardt, and Jaylen Butler during yet another protest on the

---

[1]     Unless otherwise noted, the following facts are taken from the complaint and are accepted as true at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

night of Friday, August 21. *Id.* ¶¶ 59–80. All were arrested without warrants. *Id.* ¶¶ 26, 33, 40, 47, 53, 60, 67, 74.

After their arrests on a Friday night or a Saturday afternoon, each of the Plaintiffs was transported to the Winnebago County Jail and detained over the weekend before appearing in court the following Monday at 1:30 p.m. to determine whether and under what conditions he or she would be released on bond. *Id.* ¶¶ 28, 35, 42, 49, 55, 64, 71, 78. Mitchell, Schultz, Walston, and Riggs were released on their own recognizance after their bail hearings. *Id.* ¶¶ 29, 36, 43, 50. Bail for Holland was set at $50,000. *Id.* ¶ 56. And, although detained when this action was filed, Wagner, Ehrhardt, and Butler have since been released on their own recognizances as well. *See* Pls.' Combined Resp. Opp. Def. Chief Judge Doherty's Mot. Dismiss and Reply Supp. Mot. Prelim. Inj. ("Pls.' Combined Resp.") at 2, ECF No. 48.

As Plaintiffs elaborate in their declarations in support of their motion for a preliminary injunction, their weekends in jail caused each of them to suffer, not only a loss of liberty, but "physical pain and suffering, lost wages, and emotional distress." *See* Am. Compl. at ¶¶ 31, 38, 45, 52, 58, 65, 72, 80 (alleging damages); Mitchell Decl. ¶¶ 3, 6, ECF No. 35-1; Riggs Decl. ¶¶ 4–5, ECF No. 35-1; Wagner Decl. ¶¶ 3–5, 7–9, ECF No. 35-1; Walston Decl. ¶¶ 3, 6, ECF No. 35-1 (collectively, "Decls. Pls. Walston, Mitchell, Riggs, and Wagner") (elaborating). For example, while detained, Wagner did not receive any medical treatment for a concussion and a bleeding head wound that he had sustained during his arrest. Wagner Decl.

A.3

¶¶ 3–5. Walston was not permitted to take her prescription medication. Walston Decl. ¶ 6. And Mitchell was fired from a job she had held for over two years after the police informed her employer of her arrest; she has lost ten to fifteen pounds as a result of anxiety stemming from her detention. Mitchell Decl. ¶ 6.

## B. Procedural History

Plaintiffs bring claims under 42 U.S.C. § 1983, seeking redress for violations of their Fourth Amendment rights. Because Winnebago County falls within Illinois's 17th Judicial Circuit, Plaintiffs sue Eugene Doherty, Chief Judge of the 17th Judicial Circuit Court, in his official capacity as the individual responsible for establishing the schedule for probable cause and bond hearings. Am. Compl. ¶¶ 2–4. Plaintiffs also assert a claim against Winnebago County Sheriff Gary Caruana in his official capacity as the individual responsible for managing the Winnebago County Jail and setting policies regarding the custody of pre-trial detainees. *Id.* ¶¶ 21, 81–86. And Plaintiffs have joined Winnebago County as a defendant pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003), as the entity financially responsible for the jail and the 17th Judicial Circuit Court. *Id.* ¶ 22. (Except where it is necessary to distinguish among them, the Court will refer to Defendants collectively as "Winnebago County," "the County," or "Defendants.")

Mitchell, Holland, Riggs, Schultz, and Walston initially filed their complaint on August 2, 2020, claiming that the County had failed to make a probable cause determination within 48 hours of their warrantless arrests, in violation of the

4

A.4

Supreme Court's mandate in *County of Riverside v. McLaughlin*. Class Action Compl. ¶ 4, ECF No. 1 (citing *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991)). In *McLaughlin*, the Supreme Court held that "the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest," and that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement." 500 U.S. at 47, 56.

However, after filing their complaint, Plaintiffs learned that the County, in fact, does arrange for a judge to make probable cause determinations (albeit on an *ex parte* basis) within 48 hours of an arrest, even on the weekends. Pls.' Am. Mot. Prelim. Inj. ("Mot. Prelim. Inj.") at 2 n.1, ECF No. 19. So, on August 21, Plaintiffs filed an amended complaint.

In addition to adding Plaintiffs Butler, Ehrhardt, and Wagner, Plaintiffs now claim that the Fourth Amendment, as interpreted in *McLaughlin*, not only requires a probable cause determination without 48 hours of a warrantless arrest, but also mandates a judicial determination of bail eligibility within the same time period. Am. Compl. ¶¶ 2–4, 104–05. And so, in Count I, Plaintiffs name Chief Judge Doherty and seek a class-wide injunction that would require the 17th Judicial Circuit Court to hold bail hearings within 48 hours of a warrantless arrest. *Id.* ¶ 105. In Count II, Plaintiffs seek damages against Sheriff Caruana for the named Plaintiffs on an individual basis for their loss of physical liberty,

A.5

physical pain and suffering, lost wages, and emotional distress as a result of the alleged constitutional violations. *Id.* ¶ 108.

In conjunction with the amended complaint, Plaintiffs also moved for class certification and a preliminary injunction. *See* Pls.' Am. Mot. Class Cert., ECF No. 18; Mot. Prelim. Inj. Chief Judge Doherty opposed both motions and moved to dismiss Count I. *See* Def. Chief Judge Doherty's Mot. Dismiss Count I, ECF No. 38. Sheriff Caruana moved to dismiss Count II. *See* Def. Sheriff Caruana's Mot. Dismiss Count II, ECF No. 28. The Court held a hearing on Plaintiffs' motion for a preliminary injunction, *see* 11/5/20 Min. Entry, ECF No. 52, and at the Court's direction, Chief Judge Doherty submitted a supplemental filing outlining the schedule for bond hearings in Winnebago County, *see* Suppl. Filing Regarding Bond Hearings, ECF No. 55.

## II.    Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At

the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). For that reason, "[t]hreadbare recitals" that a cause of action exists, "supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Here, Plaintiffs ground their claims in the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It also "establishes the standards and procedures governing pretrial detention in criminal cases." *Williams v. Dart*, 967 F.3d 625, 632 (7th Cir. 2020) (quoting *Manuel v. City of Joliet*, 137 S. Ct. 911, 914 (2017)) (cleaned up).

In determining whether a particular governmental action violates this Amendment, courts "inquire first whether the action was regarded as an unlawful search or seizure under the common law when the Amendment was framed." *Wyoming v. Houghton*, 526 U.S. 295, 299–300 (1999); *see also Gerstein*, 420 U.S. at 114 (noting that historical "common law . . . has guided [our] interpretation of the Fourth Amendment"). If that inquiry yields no answer, courts "must evaluate the search or seizure under traditional standards of reasonableness." *Houghton*, 526 U.S. at 299–300. That evaluation balances "the individual's right to liberty and the State's duty to control crime." *Gerstein*, 420 U.S. at 112.

### III.   Analysis

A.7

Plaintiffs assert that the Fourth Amendment requires Winnebago County to hold a bail hearing within 48 hours of a warrantless arrest. In support, they rely principally on three sets of cases. First, Plaintiffs posit that the Supreme Court's decisions in *Gerstein* and *McLaughlin* contemplate that a bail determination be made within the same 48-hour period that the Court required for probable cause determinations. Second, they read two cases from the Seventh Circuit as endorsing this interpretation of *Gerstein* and *McLaughlin*. Third, they rely on recent decisions from the Fifth and Tenth Circuits—evaluating claims under the Fourteenth Amendment—for additional support. The Court will address these in turn.

## A.     The Supreme Court's Decisions in *Gerstein* and *McLaughlin*

In *Gerstein v. Pugh*, the Supreme Court considered a challenge to the practice of Dade County, Florida, that permitted prosecutors to charge non-capital offenses by information, without a preliminary hearing and without obtaining leave of court. 420 U.S. at 105. As a result of this practice, any arrestee charged by information could be held "for a substantial period solely on the decision of a prosecutor." *Id.* at 106.

Dade County argued that "the prosecutor's decision to file an information is itself a determination of probable cause that furnishes sufficient reason to detain a defendant pending trial." *Id.* at 117. The Supreme Court disagreed. Although recognizing that a police officer's on-the-scene assessment of probable cause can justify a warrantless arrest and a "brief period of detention to take the

8

A.8

administrative steps incident to arrest," the Court held that, once a suspect is in custody "the reasons that justify dispensing with the magistrate's neutral judgment evaporate." *Id.* at 114. The Supreme Court explained:

> The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.

*Id.* (internal citations omitted).

At the same time, the Supreme Court noted that "adversary safeguards are not essential for the probable cause determination required by the Fourth Amendment." *Id.* at 120. Thus, states are free to employ "a nonadversary proceeding [based] on hearsay and written testimony," *id.*, as long as probable cause is determined by "a judicial officer either before or promptly after arrest," *id.* at 125.

As to what it meant by "promptly after arrest," the Supreme Court answered that question sixteen years later, in *McLaughlin*. 500 U.S. at 47. There, the plaintiffs challenged the policies of Riverside County, California, which had combined probable cause determinations with its arraignment procedures. *Id.* Riverside required arraignments to be conducted "without unnecessary delay and,

9

A.9

in any event, within two days of arrest," but it excluded weekends and holidays from that count. *Id.* As a result, a person arrested late in the week could wait up to five days for a probable cause determination, and a person arrested over the Thanksgiving weekend could wait as long as seven days. *Id.*

In a majority opinion written by Justice O'Connor, the Supreme Court held that Riverside's policy violated the Fourth Amendment. *Id.* at 58–59. More salient for present purposes, in an effort to provide additional guidance on the matter, the Court announced that a probable cause determination is presumptively constitutional if it is made within 48 hours of an arrest—unless the arrestee can demonstrate that the delay was "unreasonabl[e]." *Id.* at 56. A delay is unreasonable if, for example, it was "for the purpose of gathering additional evidence to justify the arrest, [was] motivated by ill will against the arrested individual, or [was] delay for delay's sake." *Id.* After 48 hours, "the burden shifts to the government to demonstrate the existence of a *bona fide* emergency or other extraordinary circumstance" to justify the delay. *Id.* at 57. The Supreme Court specifically noted that an intervening weekend does not qualify as an extraordinary circumstance. *Id.*

Justice Marshall filed a dissenting opinion in which Justices Blackmun and Stevens joined. Justice Scalia also dissented, writing separately. He argued that "promptly after arrest" means "upon completion of the 'administrative steps incident to arrest.'" *Id.* at 65 (Scalia, J., dissenting) (quoting *Gerstein*, 420 U.S. at 114). As such, Justice Scalia believed that

A.10

> absent extraordinary circumstances, it is an "unreasonable seizure" within the meaning of the Fourth Amendment for the police, having arrested a suspect without a warrant, to delay a determination of probable cause for the arrest either (1) for reasons unrelated to arrangement of the probable-cause determination or completion of the steps incident to arrest, or (2) beyond 24 hours after the arrest.

*Id.* at 70.

But the majority of the Court rejected this 24-hour rule, noting that, while *Gerstein* required every state to provide prompt determinations of probable cause, *Gerstein* also stood for the proposition that "the Constitution does not impose on the States a rigid procedural framework. Rather, individual States may choose to comply in different ways." *Id.* at 53 (majority opinion). Imposing a 24-hour rule, in the Court's view, would leave "no room whatsoever for 'flexibility and experimentation by the States.'" *Id.* at 54 (quoting *Gerstein*, 420 U.S. at 123). For instance, it would make it impossible to "[i]ncorporat[e] probable cause determinations 'into the procedure for setting bail or fixing other conditions of pretrial release'—which *Gerstein* explicitly contemplated." *Id.* (quoting *Gerstein*, 420 U.S. at 124).

By contrast, the majority observed, a period of 48 hours would be sufficient to permit States to balance (on the one hand) the burden of "introducing further procedural complexity into an already intricate system," *id.* at 53, against (on the other) the interest of an arrestee in a prompt determination of probable cause, *see id.* at 55 (noting that a state "has no legitimate interest in detaining for extended periods individuals who have been arrested without probable cause"). That said,

11                                                                                              A.11

where States choose to combine probable cause determinations with other proceedings, such proceedings still must be performed "promptly." *Id.* at 58. And so, "[o]nly those proceedings that arise very early in the pretrial process—such as bail hearings and arraignments"—are "candidates for combination" with the probable cause determination. *Id.* And, "[e]ven then, every effort must be made to expedite the combined proceedings." *Id.*

Plaintiffs read *McLaughlin* to say that a bail determination must be held within 48 hours of an arrest. *See* Pls.' Combined Resp. at 5–6 ("*McLaughlin* is properly read as holding that the reason a *shorter* time frame than 48 hours isn't required for a probable cause determination was that there would be administrative efficiency in combining probable cause determinations with bail determinations—the presumption being that bail determination must also occur within 48 hours"). But this is incorrect.

The Supreme Court in *McLaughlin* did not say that a bail hearing must be held within 48 hours of an arrest. Rather, the Court said that a bail hearing must occur within 48 hours of an arrest, if it is *combined* with a probable cause determination. This is because *Gerstein* requires that a probable cause determination be made "promptly" after an arrest. Neither *Gerstein* nor *McLauglin* addressed the timing of a bail hearing where, as here, a probable cause determination is made separately within the 48-hour time period.

Furthermore, to the extent that Plaintiffs take issue with Winnebago County's practice of allowing judicial officers to make probable cause

12

A.12

determinations over the weekend on an *ex parte* basis, this too is unavailing. After all, *Gerstein* explicitly held that *ex parte* determinations of probable cause based on hearsay and written testimony are constitutionally acceptable. 420 U.S. at 120.

For their part, Plaintiffs rely heavily on *Gerstein*'s commentary on the ills of unnecessary pretrial detention (concerns that are reiterated in *McLaughlin*). Pls.' Combined Resp. at 13 (citing *McLaughlin*, 500 U.S. at 52). In particular, the Supreme Court worried that "prolonged detention based on incorrect or unfounded suspicion may unjustly 'imperil [a] suspect's job, interrupt his source of income, and impair his family relationships.'" *McLaughlin*, 500 U.S. at 52 (quoting *Gerstein*, 420 U.S. at 114)). But the Supreme Court was primarily concerned with such consequences flowing to "those so blameless that there was *not even good reason to arrest them*," *McLaughlin*, 500 U.S. at 71 (Scalia, J., dissenting) (emphasis added); those whose arrests were "based on [an] *incorrect . . .* suspicion," *id*. at 52 (majority opinion) (emphasis added); and those whose liberty was subjected to "*unfounded* interference," *Gerstein*, 420 U.S. at 114 (emphasis added). In other words, the Supreme Court in these cases was addressing individuals whose arrests were not supported by probable cause—not individuals, like Plaintiffs, who have had a probable cause determination and were awaiting a judicial determination as to pretrial release. *Cf.* 725 Ill. Comp. Stat. 5/110-5 (instructing courts to consider, for example, "the nature and circumstances of the offense charged," the "conditions necessary to reasonably assure the appearance

of the defendant for further court proceedings," and "the financial ability of the accused.").

As the Supreme Court urged, "police should make every attempt to minimize the time a presumptively innocent individual spends in jail." *McLaughlin*, 500 U.S. at 58. And there is no doubt that this case demonstrates how pretrial detention can have serious consequences for all detainees. *See generally* Decls. Pls. Walston, Mitchell, Riggs, and Wagner. But on their own terms, *Gerstein* and *McLaughlin* do not require a bail hearing within 48 hours of an arrest, as Plaintiffs claim.[2]

## B. The Seventh Circuit's Decisions in *Paine* and *Bridewell*

Plaintiffs next argue that the Seventh Circuit has twice interpreted *McLaughlin* as mandating a bail determination within 48 hours—first in *Paine v. Cason*, 678 F.3d 500 (7th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (May 17, 2012); and then in *Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013).

Defendants respond that the passages upon which Plaintiffs rely are *dicta* and, thus, nonprecedential. A *dictum* is "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful

---

[2] Plaintiffs also point to a comment in *Atwater v. City of Lago Visa*, a more recent Supreme Court case, that upheld the constitutionality of custodial arrests for misdemeanors. 532 U.S. 318, 323 (2001). In that decision, the Court noted that it was not "atypical" for individuals arrested for misdemeanor offenses to be given "a prompt opportunity to request release." *Id.* at 352. But that proposition falls short of *requiring* a bail hearing to take place within 48 hours of an arrest.

consideration of the court that uttered it." *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988). When determining whether a statement is a *dictum*, it is important to "ask what reasons there are against . . . giving weight to [the] passage." *Id.* "One is that the passage was unnecessary to the outcome of the earlier case and therefore perhaps not as fully considered as it would have been if it were essential to the outcome." *Id.* "[A]nother reason is that the passage was not grounded in the facts of the case and the judges may therefore have lacked an adequate experiential basis for it; another, that the issue . . . was not refined by the fires of adversary presentation." *Id.* at 292–93. These reasons all address the core issue: whether the statement was a "fully measured judicial pronouncement." *Id.* at 293.

Turning to the two cases cited by Plaintiffs, in *Paine v. Cason*, the plaintiff, Christina Eilman,[3] brought a civil rights action under 42 U.S.C. § 1983. 678 F.3d at 507–09. She had been arrested by the Chicago police as a result of erratic behavior she had displayed while experiencing a manic bipolar episode. *Id.* at 503. About a day and a half after her arrest, Eilman—still in the throes of her manic episode—was released on her own recognizance in a high-crime neighborhood ninety minutes before sunset. *Id.* at 504–05. Due to her impaired state, Eilman was raped at knifepoint in a seventh-floor apartment approximately five hours after her release. *Id.* at 505–06. When she attempted to flee, Eilman fell from the

---

[3]     Technically, Eilman's mother brought the suit on her daughter's behalf, because Eilman suffered brain damage due to the events giving rise to the case. *Paine*, 678 F.3d at 506.

A.15

apartment window and suffered permanent brain damage. *Id.* at 506. In her suit against the police, Eilman argued, among other things, that she had a right to be detained at the jail until her manic episode had passed or until she had received appropriate medical treatment. *Id.* at 507–09.

The Seventh Circuit concluded that the qualified immunity doctrine precluded liability under Eilman's "right to be detained" theory. *Id.* at 509. In reaching that conclusion, the court noted that such a right would conflict with the plaintiff's rights under *McLaughlin*, reasoning that

> a "right to be detained for medical care" would put police in a bind. Evidence in *Portis v. Chicago*, 613 F.3d 702, 704 (7th Cir. 2010), suggests that 10% of all persons arrested in Chicago are drunk or high on drugs, and a similar portion may have some mental illness. Existing law creates a right to be released on bail (for bailable crimes) as promptly as possible, with 48 hours as the outside time before presentation to a judicial officer who can make an authoritative decision. *See County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). When it is possible, police who do not need to hold someone for an appearance in court must release people faster . . . . A competing "right to be detained" would put police in a damned-if-you-do, damned-if-you-don't situation.

*Id.* at 508.

Plaintiffs point to this passage to argue that the Seventh Circuit has adopted their preferred reading of *McLaughlin*. But, a page later, the *Paine* court explicitly stated that it "need not and [does] not decide whether—and, if so, when—there is a constitutional right to have custody prolonged so that more or better medical care may be provided." *Id.* at 509. This is so, noted the court, because "[t]his is a qualified-immunity appeal, and the critical question is whether

16

A.16

plaintiff's claim rests on a 'clearly established' right." *Id.* Thus, the *Paine* court's interpretation of *McLaughlin* is "not addressed to the question before the court or necessary for its decision"; in other words, it is a *dictum. See Crawley*, 837 F.2d at 292.

In *Bridewell v. Eberle*, the plaintiff, an arrestee, filed a § 1983 claim, asserting that the police had waited too long to present her to a court after her arrest. 730 F.3d at 676. Plaintiff sought damages under *McLaughlin* for the 63 hours that she had waited in jail before her initial appearance and probable cause determination. *Id.* But, despite the clear *McLaughlin* violation, the Seventh Circuit rejected her claim, holding that she could not prove an injury because she was not entitled to bail, and there was probable cause to support her arrest. *Id.* at 676–77. The court reasoned that "[i]f the police had complied with [*McLaughlin*], she would have learned these things a little sooner but would have remained in jail. This means that she was not injured by the delay." *Id.*

In reaching that conclusion, the Seventh Circuit made two statements that Plaintiffs highlight. First, it noted that "[*McLaughlin*] holds that the fourth amendment allows no more than 48 hours for the police to get a magistrate's approval of a suspect's continued detention." *Id.* at 676. Given *McLaughlin*'s holding, however, the Seventh Circuit in writing "approval of . . . detention" was likely referring to a probable cause determination, so this sentence does not help Plaintiffs.

In another passage cited by Plaintiffs, the court in *Bridewell* also noted:

A.17

> The Supreme Court observed in [*McLaughlin*] that the reason for requiring suspects in custody to be taken before a magistrate promptly is to ensure that detention based on "incorrect or unfounded suspicion" is short-lived, 500 U.S. at 52, and that persons properly arrested but entitled to bail can be released promptly.

*Id.* But it is notable that the citation to *McLaughlin* is placed before the Seventh Circuit's comment about release on bail, which suggests that the panel did not believe that *McLaughlin* stands for the second proposition. What is more, the court's mention of bail "could have been deleted without seriously impairing the analytical foundations of the holding"—there, that the plaintiff could not prove injury—meaning that this remark, too, is a *dictum*. *See Crawley*, 837 F.2d at 292. And, in case there was any doubt, the Seventh Circuit in *Bridewell* (as it did in *Paine*) explicitly declined to decide the merits of the plaintiff's timeliness claims. *See Bridewell*, 730 F.3d at 676 ("We need not decide whether Bridewell has adequately demonstrated that her claim differs from the one resolved in *Dunn* [*v. City of Chicago*, 231 F.R.D. 367 (N.D. Ill. 2005)], because she cannot show injury.").

Furthermore, the Supreme Court has expressed significant unease with the potential intrusion into state government that claims challenging the timeliness of criminal proceedings could bring. In *McLaughlin*, for example, the Supreme Court emphasized that courts must give "proper deference to the demands of federalism" when considering the widely varied and "intricate system[s]" of state criminal procedures. 500 U.S. at 53. Indeed, one goal of *McLaughlin* was to get federal judges out of the business of "making legislative judgments and overseeing local jailhouse operations." *Id.* at 56.

Thus, given that the Seventh Circuit has yet to directly consider the question of when the Constitution requires a bail hearing and the question raises significant issues of federalism, the Court finds that substantial reasons caution against "giving weight" to the *dicta* in *Paine* and *Bridewell* on which Plaintiffs rely. *See Crawley*, 837 F.2d at 292.

## C. The Fifth and Eleventh Circuits' Decisions in *Walker* and *ODonnell*

Finally, Plaintiffs turn to two out-of-circuit cases to support their reading of *McLaughlin*—*Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 1446 (2019); and *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018). Neither does so.

In *Walker,* the plaintiff filed a lawsuit against the city on behalf of a putative class of indigent individuals who had been arrested on misdemeanor charges, challenging the city's practice of requiring misdemeanor arrestees to pay a standard $160 cash bond or be detained. 901 F.3d at 1251–52. Favoring non-indigent arrestees in this manner, the plaintiff claimed, violated the Fourteenth Amendment by "jailing the poor." *Id.* at 1252.

But the Eleventh Circuit rejected this claim, ruling that the city could permissibly hold indigent arrestees for up to 48 hours before setting bail at a judicial hearing—even if other arrestees could have obtained their release sooner by paying a bond. *Id.* at 1266. The Eleventh Circuit reasoned:

> Under *McLaughlin*, the City can presumptively hold a person for 48 hours before even establishing probable cause—that is, without even proving that it has evidence that he has committed a crime. It stands to reason that

19

A.19

> that the City can take the same 48 hours to set bail for somebody held *with* probable cause . . . . [Thus,] indigency determinations for purposes of setting bail are presumptively constitutional if made within 48 hours of arrest.

*Id.* Contrary to Plaintiffs' contention, then, the Eleventh Circuit in *Walker* did not hold that *McLaughlin* requires a bail hearing within 48 hours of an arrest, only that a bond hearing within that timeframe would be presumptively constitutional.

Similarly, in *ODonnell*, the plaintiff filed a class action alleging that the county's system for setting bail for indigent misdemeanor arrestees violated Texas statutory and constitutional law, as well as the due process and equal protection clauses of the Fourteenth Amendment. 892 F.3d at 152. The Fifth Circuit first found that the Texas constitution creates a liberty interest in bail by providing that "[a]ll prisoners shall be bailable by sufficient sureties" (with limited exceptions that did not apply). *Id.* at 158 (citing Tex. Const. art. 1, § 11). And it agreed with the plaintiff that Harris County's existing procedures were not sufficient to protect that state right because "secured bail orders [we]re imposed almost automatically on indigent arrestees . . . . [in an] amount that detain[ed] the indigent." *Id.* at 159.

That said, the Fifth Circuit went on to hold that the district court's injunction, which required a bail hearing within 24 hours, was "too strict under federal constitutional standards." *Id.* at 160. In so doing, the Fifth Circuit noted that *McLaughlin* had interpreted *Gerstein* "as establishing a right to a probable cause hearing within 48 hours." *Id.* The Fifth Circuit then added that "*McLaughlin* explicitly included bail hearings within this deadline," and concluded

that "the federal due process right entitles detainees to a [bail] hearing within 48 hours," attributing that proposition to *McLaughlin. Id.*

Although these two sentences from *ODonnell* appear to support Plaintiffs' reading of *McLaughlin*, the Court respectfully declines to follow it for two reasons. First, for the reasons explained, this is an erroneous reading of *McLaughlin.* Second, the issue before the court was whether the district court's injunction requiring a bail hearing within 24 hours of an arrest was constitutionally mandated. Having answered in the negative, the Fifth Circuit had no occasion to fully consider what period beyond the 24 hours would pass constitutional muster. And so, the Fifth Circuit's truncated treatment of *Gerstein* and *McLaughlin* (and its misapprehension of *McLaughlin*) is understandable within the posture of that case.

In sum, for the reasons explained, the Court rejects Plaintiffs' arguments that existing authority establishes a Fourth Amendment right to a bail hearing within 48 hours of a warrantless arrest.

## D.    Remaining Arguments

Given the absence of controlling law, the Court is left to consider whether the delays Plaintiffs experienced between their arrests and subsequent bail hearings in this case were "unreasonable" under the Fourth Amendment. *See* U.S. Const. amend. IV; *Houghton*, 526 U.S. at 299–300 (courts "must evaluate the search or seizure under traditional standards of reasonableness").

In considering what is reasonable, the interpretation of the Fourth Amendment is often guided by historical common law. *See Gerstein*, 420 U.S. at 114. For example, in *McLaughlin*, Justice Scalia noted that one of the most important "traditional protections against unlawful arrest afforded by the common law . . . . was that a person arresting a suspect without a warrant must deliver the arrestee to a magistrate 'as soon as he reasonably can.'" 500 U.S. at 60–61 (Scalia, J., dissenting) (quoting 2 M. Hale, Pleas of the Crown 95 n.13 (1st am. ed. 1847)). But the historical analysis in *McLaughlin* and *Gerstein* was focused on the lawfulness of the *arrest*—in other words, whether the arrest was supported by probable cause—not the timing of *bail*. *See id.*; *Gerstein* 420 U.S. at 114–15. And Plaintiffs do not make a separate historical argument to support their claim. *Cf. United States v. Barr*, 960 F.3d 906, 916 (7th Cir. 2020) ("It is not [the court's] job to do the legal research that [Plaintiffs] ha[ve] omitted." (citation omitted)).

In fact, Plaintiffs' only argument that does not rely on *McLaughlin* is that some upper time limit must be necessary to protect presumptively innocent arrestees from "continued detention for multiple days." *See* Pls.' Combined Resp. at 13. Plaintiffs' brief does not specify what it means by "multiple days," but the amended complaint provides a more precise timeframe, alleging that the named Plaintiffs were detained for between 48.5 and 67.25 hours.[4] Am. Compl. ¶¶ 25–

---

[4]     Plaintiff Riggs was arrested at approximately 1:00 p.m. on Saturday, August 1, 2020, and he was brought before a judge at 1:30 p.m. on Monday, August 3, 2020, resulting in a 48.5-hour detention. Am. Compl. ¶¶ 47, 49. Plaintiff Holland was arrested at approximately 6:20 p.m. on Friday, July 31, 2020, and he was brought before a judge at 1:30 p.m. on Monday, August 3, 2020, resulting in a 67.25-hour detention. *Id.* ¶¶ 53, 55. The Court also directed the County to submit an affidavit regarding its bond schedule. That affidavit indicates that

22

A.22

80. The question raised by the amended complaint, then, is whether a period of 67.25 hours between an individual's arrest and his or her bail hearing, without more, is unreasonable under the Fourth Amendment.

Guidance on this topic can be found in decisions by the Supreme Court and Seventh Circuit addressing the length of detentions that are permissible under the Fourteenth Amendment. In *Baker v. McCollan*, the plaintiff was arrested on a warrant that had been issued for the arrest of his brother. 443 U.S. 137, 140–41 (1979). The plaintiff brought a § 1983 claim under the Fourteenth Amendment, arguing that his detention for three days without an initial court appearance, where he could argue that his arrest was incorrect, was unconstitutional. *Id.* at 141–42. The Supreme Court disagreed.

Discussing *Gerstein*, the Supreme Court first noted that "[s]ince an adversary hearing [to evaluate probable cause] is not required, and since the probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." *Id.* at 143.

As for the plaintiff's argument that the state had a constitutional duty to assess his protests of mistaken identity before detaining him for three days, the Supreme Court found that, absent an attack on the validity of the warrant, a three-

---

72 hours is the longest that an arrestee could go without a bail hearing. *See* Decl. Chief Judge Eugene Doherty at 1–2, ECF No. 55-1.

A.23

day deprivation of liberty did not violate the Fourteenth Amendment. *Id.* at 143–44. As the Supreme Court explained,

> mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty . . . without due process of law." But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.

*Id.* at 145.

The Seventh Circuit addressed a similar issue in *Holloway v. Delaware County Sheriff*, 700 F.3d 1063 (7th Cir. 2012). There, the plaintiff was arrested without a warrant on a Tuesday; a probable cause determination was made on Wednesday; and he appeared in an initial hearing on Thursday, where the court ordered him detained and provided the prosecutor with more time to investigate the crime before filing charges. *Id.* at 1066. In the end, however, the prosecutor never filed charges against the plaintiff, and he was released nine days after his arrest. *Id.* at 1067. The plaintiff then filed suit, claiming that his nine-day detention without charges violated the Fourteenth Amendment's due process clause. *Id.* at 1067–68.

"Like in *Baker*," the Seventh Circuit observed, "the Sheriff detained Holloway for only three days without a hearing and without any further investigation into his case." *Id.* at 1070 (citing *Baker*, 443 U.S. at 145). As a result, neither Holloway's 72-hour detention before an initial hearing nor the other actions by the Sheriff violated the Fourteenth Amendment. *Id.* at 1071.

A.24

Finally, in *Bailey v. City of Chicago*, a probable cause determination was not made until 47 hours after the plaintiff's arrest, and bail was not denied until the day after that. 779 F.3d 689, 693 (7th Cir. 2015). In that case, the plaintiff argued that waiting until the forty-seventh hour to make a probable cause determination should be unconstitutional, because *McLaughlin*'s 48-hour presumption should be reconsidered in light of technological developments since 1991. *Id.* at 696. But the Seventh Circuit rejected that argument—and made no comment about the timing of the plaintiff's bail hearing, which took place many hours later. *Id.*

Rather than supporting Plaintiffs' position that the Constitution mandates a bail hearing for an arrestee within 48 hours of his or her arrest, these decisions suggest that a longer period—something in the realm of 72 hours—might be constitutionally permissible, when the detention is supported by a timely determination of probable cause. Other courts have agreed. *See, e.g.*, *Edwards v. Cofield*, 301 F. Supp. 3d 1136, 1149 (M.D. Ala. 2018) (indigent plaintiff failed to show substantial likelihood of success on the merits of claim that a maximum delay of 72 hours before a bond hearing is unconstitutional under the Fourteenth Amendment); *Farrow v. Lipetzky,* No. 12-cv-06495, 2013 WL 1915700, *22 (N.D. Cal. May 8, 2013) (plaintiffs failed to cite any authority holding that a delay of five to thirteen days for bail hearing violates the Fourteenth Amendment); *Burton v. McCormick,* No. 3:11 CV 026, 2011 WL 1157557, *3 (N.D. Ind. Mar. 29, 2011) (no violation of plaintiff's due process or equal protection rights for failing to hold bail

A.25

hearing where an initial hearing was held and plaintiff posted bail three days after arrest).

In the end, what is reasonable under the Fourth Amendment depends on the particular circumstances. *See Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (noting that the Fourth Amendment reasonableness standard is a "fact-specific" inquiry). The examples of unreasonable delay that the Supreme Court named in *McLaughlin*—delay in order to gather additional evidence, delay motivated by individual animus, delay for delay's sake, *see* 500 U.S. at 56—may apply equally to bail hearings as probable cause determinations. But, rather than alleging any specific facts to call into question the reasonableness of Winnebago County's procedures, Plaintiffs ask the Court to adopt a categorical rule mandating a bail hearing within 48 hours of a warrantless arrest. For the reasons stated, Plaintiffs' request is unsupported by the law or the factual allegations in this case.

## IV.    Conclusion

For the reasons set forth above, the Court concludes that Plaintiffs have failed to adequately allege that Winnebago County's procedure of providing a bail hearing more than 48 hours after Plaintiffs' weekend arrests was unreasonable under the Fourth Amendment. As a result, the Court dismisses Count I for failure to state a claim under 42 U.S.C. § 1983 and the Fourth Amendment. And, because Count II depends on the existence of a Fourth Amendment violation, it also must be dismissed. With the operative complaint dismissed, Plaintiffs' motions for a preliminary injunction and class certification are denied as moot. If Plaintiffs

believe they can file an amended complaint that is consistent with this order, they may seek leave to file an amended complaint within 21 days.


**IT IS SO ORDERED.**                    **ENTERED: 3/30/21**

 

_____

**JOHN Z. LEE**
**United States District Judge**

A.27

ILND 450 (Rev. 10/13) Judgment in a Civil Action

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

DYLAN MITCHELL, DAYNA SCHULTZ,
LARISSA WALSTON, MICHAEL RIGGS,
IVAN HOLLAND, ANDREW EHRHARDT,
ROSS WAGNER, and JAYLEN BUTLER,
individually and on behalf of all others similarly
situated,,

Plaintiff(s),

v.

EUGENE DOHERTY, in his official capacity as
the Chief Judge of the 17th Judicial Circuit Court
of Illinois, GARY CARUANA, in his official
capacity as the Sheriff of Wnnebago County; and
WINNEBAGO COUNTY,,

Defendant(s).

Case No.  3:20-cv-50285
Judge John Z. Lee

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $           ,

which ☐ includes         pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

☐    in favor of defendant(s)
and against plaintiff(s)

.

Defendant(s) shall recover costs from plaintiff(s).

☒    other: in favor of Defendants

This action was *(check one)*:

☐ tried by a jury with Judge      presiding, and the jury has rendered a verdict.
☐ tried by Judge      without a jury and the above decision was reached.

A.28

☒ decided by Judge John Z. Lee on a motion to dismiss [28] [38]

Date:   4/21/2021                                        Thomas G. Bruton, Clerk of Court

                                                              Yulonda Thomas, Deputy Clerk

A.29

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**ROCKFORD DIVISION**

| | | |
|---|---|---|
| DYLAN MITCHELL, DAYNA SCHULTZ, LARISSA WALSTON, MICHAEL RIGGS, IVAN HOLLAND, ANDREW EHRHARDT, ROSS WAGNER, and JAYLEN BUTLER, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 20 CV 50285 |
| EUGENE G. DOHERTY, in his official capacity as the Chief Judge of the 17th Judicial Circuit Court; GARY CARUANA, in his official capacity as the Sheriff of Winnebago County; and WINNEBAGO COUNTY, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | **Jury Trial Demanded** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Dylan Mitchell, Dayna Schultz, Larissa Walston, Michael Riggs Ivan Holland, Andrew Ehrhardt, Ross Wagner, and Jaylen Butler individually and on behalf of all others similarly situated, complain against Defendants Chief Judge of the 17th Judicial Circuit Court Eugene Doherty, Winnebago County Sheriff Gary Caruana, and Winnebago County as follows:

**Nature of the Case**

1.     This is an action for money damages, declaratory relief and injunctive relief brought pursuant to 42 U.S.C. § 1983. Plaintiffs, individually and on behalf of

A.30

the class they seek to represent, allege violations of their rights under the Fourth Amendment of the United States Constitution.

2.    The 17th Judicial Circuit Court is responsible for conducting probable cause hearings and bond hearings for individuals arrested without a warrant and detained in anticipation of criminal court proceedings in Winnebago County. The 17th Judicial Circuit Court typically has an *ex parte* hearing to determine probable cause within 48 hours of arrest. But the Circuit Court only conducts bond hearings for individuals arrested on felony charges on business days and does not make any arrangements for individuals arrested on weekends to be brought before a judge for a determination of bail eligibility or the amount of bail until the next regular business day.

3.    Individuals who are arrested by any police department in Winnebago County and held in custody in anticipation of criminal court proceedings are typically imprisoned in the Winnebago County Jail, located at 650 W. State Street, Rockford, Illinois (hereinafter "the Jail"). The Jail routinely holds individuals in custody over weekends and court holidays without a hearing before a judge to determine bail eligibility or the amount of bail.

4.    The policies of the 17th Judicial Circuit Court and the Jail routinely result in detainees' being imprisoned for more than 48 hours without being brought before a judge for a determination of bail eligibility or the amount of bail.

A.31

5.     In *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) the Supreme Court held that an individual arrested without a warrant must be brought before a neutral magistrate for a determination of probable cause within 48 hours of arrest.

6.     The Court made explicit that its reason for permitting up to 48 hours for a determination of probable cause (rather than requiring an "immediate determination of probable cause upon completing the administrative steps incident to arrest") was to give states the flexibility to incorporate "probable cause determinations into the procedure for setting bail or fixing other conditions of pretrial release." *Id*. at 53-54 (*citing Gerstein v. Pugh*, 420 U.S. 103, 124 (1975)).

7.     In *Bridewell v. Eberle*, 730 F.3d 672, (7th Cir. 2013) the Seventh Circuit noted that "the reason for requiring suspects in custody to be taken before a magistrate promptly is to ensure that detention based on 'incorrect or unfounded suspicion' is short-lived, and that persons properly arrested but entitled to bail can be released promptly." *Id.* at 676 (*citing Riverside*, 500 U.S. at 52).

8.     At the time of the filing of this First Amended Complaint, named Plaintiffs Ross Wagner, and Andrew Ehrhardt and Jaylen Butler, all of whom were arrested on the evening of Friday, August 21, 2020, remain detained in the Winnebago County Jail more than 48 hours after their arrests without being brought before a judge for a hearing to determine bail eligibility or the amount of bail.

9.      As set forth in more detail below, there are two parties responsible for the unlawful detentions of the Plaintiffs.

    (a)     Defendant Eugene Doherty is the Chief Judge of the 17th Judicial Circuit Court. He has final responsibility for setting court schedules for

3

A.32

all courts within the 17 Judicial Circuit, including the time and frequency of probable cause and bond hearings; and

(b) Defendant Gary Caruana is the Winnebago County Sheriff. As the Sheriff of Winnebago County, Caruna is the top official in charge of administration and management of all operations of the Jail and has final authority to set policies regarding custody of pre-trial detainees at the Jail.

## Jurisdiction and Venue

10. Jurisdiction for Plaintiffs' federal claims is based on 28 U.S.C. §§ 1331 and 1343(a).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

## Parties

12. Plaintiff Dylan Mitchell is a 26-year-old resident of Rockford, Illinois.

13. Plaintiff Dayna Schultz is a 23-year-old resident of Rockford, Illinois.

14. Plaintiff Larissa Walston is a 23-year-old resident of Loves Park, Illinois.

15. Plaintiff Michael Riggs is a 20-year-old resident of South Beloit, Illinois.

16. Plaintiff Ivan Holland is a 25-year-old resident of Rockford, Illinois.

17. Plaintiff Ross Wagner is a 35-yer-old resident of Madison, Wisconsin.

18. Plaintiff Andrew Ehrhardt is a 23-year-old resident of Rockford, Illinois.

19. Plaintiff Jaylen Butler is a 20-year-old resident of Rockford, Illinois.

20. Defendant Eugene Doherty is the Chief Judge of the 17th Judicial Circuit Court, which covers Winnebago County. Plaintiffs sue Chief Judge Doherty in his official capacity. Pursuant to Article VI, §7(c) of the Illinois Constitution, Chief Judge Doherty has general administrative authority over the operations of the 17th

4                                                                        A.33

Judicial Circuit Court. His constitutional authority includes the obligation to "provide for ... appropriate times and places of holding court." *Id*. As the Chief Judge, Doherty has final authority to set court schedules for the 17th Judicial Circuit Court, including the dates, times and schedules for holding probable cause hearings and bond hearings.

21. Defendant Gary Caruana is the Winnebago County Sheriff. Plaintiffs sue Caruana in his official capacity. Pursuant to 55 ILCS 5/3-6017, Caruana has responsibility for the "custody and care" of the Winnebago County Jail. Caruana is the highest decision-maker with authority over the Jail, and he determines the policies of the Jail with respect to detainees' custody and confinement.

22. Plaintiffs join Winnebago County, Illinois, pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003). The operations of the Jail and the 17th Judicial Circuit Court are ultimately the financial responsibility of Winnebago County.

23. Count I is brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant Chief Judge Doherty has acted on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole on Count I of this Complaint. The named Plaintiffs seek to represent a class of similarly situated detainees who are currently (or will be in the future) detained at the Jail on a weekend and/or court holiday pending a judicial determination of bail eligibility in

A.34

the 17th Judicial Circuit Court. Plaintiffs seek injunctive and declaratory relief against Defendant Chief Judge Doherty on behalf of the class.

24. In Count II the named Plaintiffs seek compensatory damages against Defendant Sheriff Gary Caruana.

## Factual Allegations: Dylan Mitchell

25. On Friday, July 31, 2020, Plaintiff Dylan Mitchell attended a demonstration organized by the May 30th Alliance in Rockford, Illinois. The May 30th Alliance advocates on behalf of victims of police misconduct by the Rockford Police Department. Demonstrators were demanding that charges against Black Lives Matter demonstrators arrested after the police murder of George Floyd be dropped.

26. At approximately 7:20 p.m., Rockford police arrested Plaintiff Mitchell. The arresting officers did not have a warrant calling for her arrest.

27. Plaintiff Mitchell was transported to the Winnebago County Jail.

28. Plaintiff Mitchell remained in custody at the Winnebago County Jail without being brought before a judge until 1:30 p.m. on Monday, August 3, 2020.

29. When Plaintiff Mitchell appeared in court on Monday, August 3, 2020— approximately 66 hours after her arrest—she was given an I-Bond and released on her own recognizance without having to post any monetary bond.

30. The 17th Judicial Circuit Court did not hold hearings to determine bail eligibility for individuals charged with felonies on Saturday, August 1, 2020, or Sunday, August 2, 2020.

A.35

31. As a direct and proximate result of the acts of the Defendants described above, Plaintiff Mitchell suffered and continues to suffer damages including loss of physical liberty, physical pain and suffering, and emotional distress.

### Factual Allegations: Dayna Schultz

32. On Friday, July 31, 2020, Plaintiff Dayna Schultz attended a Black Lives Matter demonstration organized by the May 30th Alliance in Rockford, Illinois.

33. At approximately 6:50 p.m., Rockford police arrested Plaintiff Schultz. The arresting officers did not have a warrant calling for her arrest.

34. Plaintiff Schultz was transported to the Winnebago County Jail.

35. Plaintiff Schultz remained in custody at the Winnebago County Jail without being brought before a judge until 1:30 p.m. on Monday, August 3, 2020.

36. When Plaintiff Schultz appeared in court on Monday, August 3, 2020—approximately 66 hours after her arrest—she was given an I-Bond and released on her own recognizance without having to post any monetary bond.

37. The 17th Judicial Circuit Court did not hold hearings to determine bail eligibility for individuals charged with felonies on Saturday, August 1, 2020, or Sunday, August 2, 2020.

38. As a direct and proximate result of the acts of the Defendants described above, Plaintiff Schultz suffered and continues to suffer damages including loss of physical liberty, physical pain and suffering, and emotional distress.

A.36

## Factual Allegations: Larissa Walston

39. On Friday, July 31, 2020, Plaintiff Larissa Walston attended a Black Lives Matter demonstration organized by the May 30th Alliance in Rockford, Illinois.

40. At approximately 7:10 p.m., Rockford police arrested Plaintiff Walston. The arresting officers did not have a warrant calling for her arrest.

41. Plaintiff Walston was transported to the Winnebago County Jail.

42. Plaintiff Walston remained in custody at the Winnebago County Jail without being brought before a judge until 1:30 p.m. on Monday, August 3, 2020.

43. When Plaintiff Walston appeared in court on Monday, August 3, 2020— approximately 66 hours after her arrest—she was given an I-Bond and released on her own recognizance without having to post any monetary bond.

44. The 17th Judicial Circuit Court did not hold hearings to determine bail eligibility for individuals charged with felonies on Saturday, August 1, 2020, or Sunday, August 2, 2020.

45. As a direct and proximate result of the acts of the Defendants described above, Plaintiff Walston suffered and continues to suffer damages including loss of physical liberty, physical pain and suffering, and emotional distress.

## Factual Allegations: Michael Riggs

46. On Saturday, August 1, 2020, Plaintiff Michael Riggs attended a demonstration in Rockford, Illinois. Demonstrators were calling to defund the police and protesting against police brutality.

A.37

47. At approximately 1:00 p.m., Rockford police arrested Plaintiff Riggs. The arresting officers did not have a warrant calling for his arrest.

48. Plaintiff Riggs was transported to the Winnebago County Jail.

49. Plaintiff Riggs remained in custody at the Winnebago County Jail without being brought before a judge until 1:30 p.m. on Monday, August 3, 2020.

50. When Plaintiff Riggs appeared in court on Monday, August 3, 2020— more than 48 hours after his arrest—he was given an I-Bond and released on his own recognizance without having to post any monetary bond.

51. The 17th Judicial Circuit Court did not hold hearings to determine bail eligibility for individuals charged with felonies on Saturday, August 1, 2020, or Sunday, August 2, 2020.

52. As a direct and proximate result of the acts of the Defendants described above, Plaintiff Riggs suffered and continues to suffer damages including loss of physical liberty, physical pain and suffering, and emotional distress.

### Factual Allegations: Ivan Holland

53. On Friday, July 31, 2020, at approximately 6:20 p.m. Rockford police arrested Plaintiff Ivan Holland. The arresting officers did not have a warrant calling for his arrest.

54. Plaintiff Holland was transported to the Winnebago County Jail.

55. Plaintiff Holland remained in custody at the Winnebago County Jail without being brought before a judge until 1:30 p.m. on Monday, August 3, 2020.

A.38

56. When Plaintiff Holland appeared in court on Monday, August 3, 2020—approximately 66 hours after his arrest—a judge determined he was eligible for bail and bail was set at $50,000.

57. The 17th Judicial Circuit Court did not hold hearings to determine bail eligibility for individuals charged with felonies on Saturday, August 1, 2020, or Sunday, August 2, 2020.

58. As a direct and proximate result of the acts of the Defendants described above, Plaintiff Holland suffered and continues to suffer damages including loss of physical liberty, physical pain and suffering, and emotional distress.

**Factual Allegations: Ross Wagner**

59. On Friday, August 21, 2020, Plaintiff Ross Wagner attended a Black Lives Matter demonstration in Rockford, Illinois.

60. At approximately 7:00 p.m., Rockford police arrested Plaintiff Wagner. The arresting officers did not have a warrant calling for his arrest.

61. Plaintiff Wagner was transported to the Winnebago County Jail.

62. At the time of this filing, Plaintiff Wagner remains in custody at the Jail. Wagner has been detained at the Jail in excess of 48 hours without a hearing to determine bail eligibility.

63. The 17th Judicial Circuit Court did not hold bail hearings for individuals charged with felonies on Saturday, August 22, 2020 or Sunday, August 23, 2020.

64. Plaintiff Wagner's first opportunity to appear before a judge will be 1:30 p.m. on Monday, August 24, 2020—approximately 66 hours after his arrest.

A.39

65. As a direct and proximate result of the acts of the Defendants described above, Plaintiff Wagner suffered and continues to suffer damages including loss of physical liberty, physical pain and suffering, and emotional distress.

**Factual Allegations: Andrew Ehrhardt**

66. On Friday, August 21, 2020, Plaintiff Andrew Ehrhardt attended a Black Lives Matter demonstration in Rockford, Illinois.

67. At approximately 8:00 p.m., Rockford police arrested Plaintiff Ehrhardt. The arresting officers did not have a warrant calling for his arrest.

68. Plaintiff Ehrhardt was transported to the Winnebago County Jail.

69. At the time of this filing, Plaintiff Ehrhardt remains in custody at the Jail. Ehrhardt has been detained at the Jail in excess of 48 hours without a hearing to determine bail eligibility.

70. The 17th Judicial Circuit Court did not hold bail hearings for individuals charged with felonies on Saturday, August 22, 2020 or Sunday, August 23, 2020.

71. Plaintiff Ehrhardt's first opportunity to appear before a judge will be 1:30 p.m. on Monday, August 24, 2020—approximately 65 hours after his arrest.

72. As a direct and proximate result of the acts of the Defendants described above, Plaintiff Ehrhardt suffered and continues to suffer damages including loss of physical liberty, physical pain and suffering, and emotional distress.

**Factual Allegations: Jaylen Butler**

73. On Friday, August 21, 2020, Plaintiff Jaylen Butler attended a Black Lives Matter demonstration in Rockford, Illinois.

A.40

74. At approximately 8:00 p.m., Rockford police arrested Plaintiff Butler. The arresting officers did not have a warrant calling for his arrest.

75. Plaintiff Butler was transported to the Winnebago County Jail.

76. At the time of this filing, Plaintiff Butler remains in custody at the Jail. Butler has been detained at the Jail in excess of 48 hours without a hearing to determine bail eligibility.

77. The 17th Judicial Circuit Court did not hold bail hearings for individuals charged with felonies on Saturday, August 22, 2020 or Sunday, August 23, 2020.

78. Plaintiff Butler's first opportunity to appear before a judge will be 1:30 p.m. on Monday, August 24, 2020—approximately 65 hours after his arrest.

79. Plaintiff Butler is employed as a cashier at La Chiquita Food Market. He was scheduled to work on Saturday, August 22, 2020, and Sunday, August 23, 2020. Because he was imprisoned in the Winnebago County Jail, he was unable to report to work as scheduled, potentially putting his job in jeopardy and leading to lost wages.

80. As a direct and proximate result of the acts of the Defendants described above, Plaintiff Butler suffered and continues to suffer damages including loss of physical liberty, physical pain and suffering, lost wages and emotional distress.

**Defendant Sheriff Caruana's Liability to the Named Plaintiffs**

81. As set forth above, it is well established that individuals arrested without a warrant are entitled to be brought before a judge for a determination of bail eligibility within 48 hours.

A.41

82.     It is the common, widespread and well-settled practice that arrestees transferred from police custody to the Jail on weekends or holidays are detained in excess of 48 hours without being brought before a judge for a determination of bail eligibility. This practice is so widespread and well settled that it constitutes a custom or usage with the force of law even though it has not been reduced to a written policy.

83.     At all times relevant to the detention of the named Plaintiffs, Defendant Sheriff Caruana knew that the 17th Judicial Circuit Court did not hold bail hearings on Saturdays, Sundays or court holidays. Defendant Sheriff Caruana likewise knew that arrestees detained at the Jail on weekends and holidays, including the Plaintiffs, were being held in excess of 48 hours without being brought before a judge for a determination of bail eligibility.

84.     Although he knew or should have known that doing so would lead to violations of detainees' Fourth Amendment rights, Sheriff Caruana nonetheless approved of and authorized the detention of arrestees at the Jail on weekends and holidays.

85.      By approving, condoning and/or turning a blind eye to the widespread violation of detainees' Fourth Amendment rights, Defendant Sheriff Caruana acted and continues to act with deliberate indifference to the rights of Plaintiffs and all others detained at the Jail on weekends and holidays.

86.     Defendant Sheriff Caruana's policy and practice described above was the moving cause behind the unlawful detentions of Plaintiffs.

A.42

**Defendant Chief Judge Doherty's Liability to the Named Plaintiffs
and the Members of the Class they Seek to Represent**

87. It is the common, widespread and well-settled practice in the 17th Judicial Circuit Court that hearings to determine bail eligibility are only conducted on business days. This practice is so widespread and well settled that it constitutes a custom or usage with the force of law even though it has not been reduced to a written policy.

88. Defendant Chief Judge Doherty knows or should know that pursuant to this practice, individuals arrested on weekends or court holidays are routinely detained in the Jail for more than 48 hours without being brought before a judge for a determination of bail eligibility in violation of their Fourth Amendment rights.

89. Defendant Chief Judge Doherty acted and continues to act with deliberate indifference to the rights of Plaintiffs and all others arrested for felonies in Winnebago County on weekends or court holidays by failing to implement a court schedule that ensures that individuals arrested on weekends or court holidays receive a hearing to determine bail eligibility.

90. The policy and practice described above was the moving cause behind the violations of the Fourth Amendment rights of the named Plaintiffs and current and future class members.

**Class Allegations**

91. Pursuant to Fed. R. Civ. P. 23(b)(2), the named Plaintiffs seek certification of Count I of this complaint as a class action. The named Plaintiffs seek to represent a class consisting of:

A.43

> All individuals arrested without a warrant on felony charges in Winnebago County who are currently detained or in the future will be detained at the Winnebago County Jail on a weekend or court holiday in excess of 48 hours pending a judicial hearing to determine bail eligibility.

92. The Plaintiff Class seeks a declaration that Defendant Chief Judge Doherty's policy and practice of failing to provide bail hearings on weekends or court holidays is unconstitutional because it results in routine violations of class members' Fourth Amendment right to a prompt judicial determination of bail eligibility.

93. The Plaintiff Class also seeks an injunction ordering Defendant Chief Judge Doherty to change the current policy and practice and to implement a schedule for bail hearings in the 17th Judicial Circuit Court that ensures individuals arrested on weekends or holidays receive a prompt hearing to determine bail eligibility.

94. The proposed class is numerous. Every weekend, individuals arrested anywhere in Winnebago County are detained in the Winnebago County Jail in excess of 48 hours without a judicial determination of bail eligibility. The challenged practice is ongoing and, on information and belief, affects a dozen or more arrestees every weekend.

95. For example, according to arrest and detention data made available by the Rockford Police Department and the Winnebago County Jail, 15 individuals arrested by Rockford Police on Friday, July 31, 2020, and prior to 1:30 p.m. on Saturday, August 1, 2020, remained imprisoned in the Winnebago County Jail in

15

A.44

excess of 48 hours before being brought before a judge for a hearing to determine bail eligibility on Monday, August 3, 2020 at 1:30 p.m.

96. Joinder of all class members is impracticable. Not only is the class numerous, but membership in the class is also constantly changing. Any individual arrested in Winnebago County may be placed in the Jail pending a judicial determination of bail eligibility. Accordingly, the membership of the class changes on a weekly basis as individuals are arrested, detained, and released from custody.

97. There are questions of law and fact common to all class members, including but not limited to:

- What is the current schedule in the 17th Judicial Circuit Court for bail hearings;

- Whether pursuant to *County of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991), detainees must be brought before a judge for a determination of bail eligibility within 48 hours of arrest.

- Whether the current schedule in the 17th Judicial Circuit Court for bail hearings leads to violations of detainees' Fourth Amendment rights.

98. All individuals falling within the class definition have been subject to the same policy and practice. Given the commonality of the questions pertinent to all class members, a single injunction or declaratory judgment would provide relief to each member of the class.

99. Defendant Chief Judge Doherty has acted and continues to act in a manner adverse to the rights of the proposed class, making final injunctive and declaratory relief appropriate with respect to the class as a whole.

A.45

100. Plaintiffs and the class they seek to represent have been directly injured by Defendant Chief Judge Doherty's policies and practices and members of the class are currently at risk of future harm from the continuation of these policies and practices.

101. Plaintiffs will fairly and adequately represent the interests of the class and the Plaintiffs' claims are typical of the claims of all members of the proposed class.

102. Plaintiffs' counsel are experienced in civil rights litigation, including *Monell* claims, civil rights class actions, and Fourth Amendment cases alleging excessive detentions. Plaintiffs' counsel will fairly and adequately represent the interests of the class.

**COUNT I**
**42 U.S.C. §1983: FOURTH AMENDMENT**
**(Claim for Injunctive and Declaratory Relief Against Defendant Chief Judge Doherty on behalf of the named Plaintiffs and all others similarly situated)**

103. Plaintiffs and the members of the proposed class reallege and incorporate as if fully set forth herein all of the allegations above.

104. As a direct and proximate result of Defendant Doherty's failure to schedule bail hearings for individuals arrested and detained on weekends and court holidays, Plaintiffs and the members of the proposed class have suffered a loss of their Fourth Amendment rights.

105. In the absence of injunctive and declaratory relief, the members of the class will continue to suffer unreasonable deprivations of their liberty. The members of the class have no adequate or complete remedy at law to address the

17

wrongs described herein. The injunctive and declaratory relief sought by the class is necessary to prevent continued and future injury.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a) Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b) Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

c) Enter judgment declaring that Defendant Chief Judge Doherty's policies and practices described herein as applied to the class violate the Fourth Amendment of the U.S. Constitution;

d) Enter a preliminary and then permanent injunction prohibiting Defendant Chief Judge Doherty from continuing the unconstitutional policies and practices identified herein;

e) Award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

f) Grant such other relief as this Court deems just and proper.

## COUNT II
### 42 U.S.C. §1983: FOURTH AMENDMENT
#### (*Monell* Official Capacity Claim Against Defendant
#### Sheriff Caruana on behalf of the Named Plaintiffs Only)

106. Plaintiffs reallege and incorporate as if fully set forth herein all of the allegations above.

107. As a direct and proximate result of Defendant Sheriff Caruana's deliberate indifference, Plaintiffs have suffered a loss of their Fourth Amendment rights.

A.47

108.   As a direct and proximate result of Defendant Sheriff Caruana's policies, the Plaintiffs have suffered damages including loss of physical liberty, physical pain and suffering, lost wages, and emotional distress.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a)   Enter judgment declaring that Defendant Sheriff Caruana's policies and practices described herein violate the Fourth Amendment of the U.S. Constitution;

b)   Award Plaintiffs compensatory damages in an amount to be fixed by a jury at trial;

c)   Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and other applicable law; and

d)   Grant such other relief as this Court deems just and proper.

**Plaintiffs demand trial by jury.**

Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Brad J. Thomson
*Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
847-361-3869

Brad J. Thomson
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
773-235-0070

19

A.48